IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) L. G., an individual<br>      Plaintiff,<br>v.<br><br>(1) STATE OF OKLAHOMA EX REL OKLAHOMA DEPARTMENT OF CORRECTIONS,<br>(2) CHRISTOPHER REDEAGLE, individually<br>(3) SHARON MCCOY, individually<br>(4) JOE ALLBAUGH, Individually<br>(5) PENNY LEWIS, Individually<br>(6) RABEKAH MOONEYHAM, individually<br>(7) HEATHER CARLSON, individually<br>(8) BOARD OF CORRECTIONS<br>      Defendants | Case *No. CIV 2020*\_\_-306-RAW |

## COMPLAINT

COMES NOW, L. G.,[1] individually and for her Complaint and against the listed Defendants alleges and states as follows:

## PARTIES

1. Plaintiff L.G. was incarcerated in the Eddie Warrior prison facility, in Muskogee Oklahoma, for a dui charge, at all relevant times, in late 2018-2019.

2. Defendant Oklahoma Department of Corrections (ODOC) is a state agency tasked with housing and rehabilitating inmates, and maintains Eddie Warrior correctional facility in Muskogee where L.G. was an inmate. ODOC created

---

[1] Due to the stigmatization of sexual assault, Plaintiff asks that her initials be used throughout this matter.

and published policies and procedures for the protection of inmates, *inter alia*.

3. Defendant Deputy Warden RedEagle was a correctional officer at Eddie Warrior at all relevant times and a resident of Muskogee County. The Muskogee DA has charged RedEagle with lewd molestation of L.G.

4. Defendant Sharon McCoy was the warden supervising Defendant RedEagle, personally responsible for enforcing compliance with specific policies relevant to this matter, and overseeing him as his supervisor, at Eddie Warrior.

5. Defendant Joe Allbaugh is the executive director of the Oklahoma Department of Corrections, personally tasked with implementation of specific policies relevant to this matter.

6. Defendants Lewis, Mooneyham, and Carlson, comprise of the Compliance Unit employees for the Oklahoma Department of Corrections, that unit being tasked with enforcement of specific policies relevant to this matter.

7. Defendant Board is a group of individuals, who regularly meet, and approve expenditures and protocols for the Oklahoma Department of Corrections, and were specifically tasked with drafting policies and procedures and overseeing the enforcement and compliance of specific policies relevant to this matter.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as factual claims and allegations asserted herein arose under 42 U.S.C. §1983.

9. Further, this Court has subject matter jurisdiction in that Plaintiffs' rights guaranteed under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution were violated by Defendants.

10. All factual claims and allegations asserted herein arose entirely within the Eastern District of Oklahoma and venue is proper in this district.

11. Plaintiff is entitled to attorney fees and costs pursuant 42 U.S.C. §1988, as this action is brought to enforce provisions of 42 U.S.C. §1983, and including injunctive relief, always available against any Defendant. After discovery, Plaintiff also seeks declaratory judgment that certain Defendants insurance policies create statutory liability above and beyond state Tort Claim limits. Plaintiff also seeks declaratory judgment that Defendants' acts and omissions are unconstitutional and/or unlawful, and contrary to their administratively adopted policies and procedures, and/or likely to lead to known constitutional violations of persons in Plaintiff's position.

## RELEVANT FACTS AND CONCERNS

12. Plaintiff L.G. had a known constitutional right not to be raped by a correctional officer. *See Keith v. Koerner (Keith II)*, 843 F.3d 833, 837 (10th Cir. 2016) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." (alteration in original) (*quoting Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993))).

13. Defendants, each of them, knew of L.G.'s above rights, as each Defendant participated in drafting, acknowledgeing, discussing, and had a duty to

3

enforce policies and procedures drafted to prevent female inmates from being violated.

14. Defendant Allbaugh is the agency Director for ODOC. Policy P-040100 is titled "Security Standards" and states that the ODOC "provides security at all institutions… security standards are established *to protect … inmates*." The agency director, ***Defendant Allbaugh***, per section II of the policy, "*is responsible for compliance with this policy*." (emphasis added).

15. *Inter alia*, Policy P-040100 requires "compliance monitoring of internal and external security" including "inventory and control of: a) ***Keys*** …."

16. ODOC Policy P-040100 also required security standards at Eddie Warrior for "transportation of inmates…post orders to include staff review and the recording of routine and *unusual events* in post logs… control of inmate/offender movement… provisions for facility staffing to ensure 24 hour continuous coverage." Defendants failed to maintain, enforce, and direct compliance with this policy, resulting in constitutional violation of Plaintiff's person. Defendant Allbaugh specifically is listed as directly responsible for "compliance" with this policy, and Defendant McCoy was also responsible for review, supervision, and direct enforcement thereof as the head of the facility.

17. Policy P-010200 states that the Defendant Oklahoma Board of Corrections will "***establish and maintain***" written policies and procedures for ODOC.

"The agency director [Defendant Allbaugh] is responsible for compliance with this policy," as stated in section VI of the policy.

18. On its website, the ODOC indicates that its "Auditing and Compliance Unit" "shall be responsible for the issuance and review of policies and procedures issued by the Board of Corrections/Director of the Oklahoma Department of Corrections." Thus, Defendants Lewis, Mooneyham and Carlson were responsible for both issuance and review of policies regarding female inmates.

19. On its website, ODOC states that the Defendant Board is "the governing body for the Department…[m]embers are responsible for *establishing and reviewing policies*, appointing the Director and confirming the appointment of wardens or unit heads." As such, the Defendant Board was proximately responsible for creating policies and enforcing policies involving Defendants McCoy, Lewis, Mooneyham, and Carlson, which proximately affected the oversight of Defendant RedEagle and his ability to have violated Plaintiff's constitutional rights, under the Fourth, Eighth, and Fourteenth Amendments.

20. Under ODOC Policy P 01200 (attachment "A"), the Defendant Board of Corrections is to provide "effective oversight" and under Section "D" "essential duties," paragraph "10" to "*establish policies*."

21. In 2018, the consulting firm of Alvarez & Marsal published a comprehensive "Efficiency Review" of ODOC, visiting facilities and conducting anonymous surveys with employees. The 2018 results indicate that Defendants failed to

5

have proper staffing, proper procedures to track inmates, that the current software system is outdated, and *facilities are "dangerous to operate."*

22. In light of such information being provided to all Defendants in 2018, Defendants failed to implement new policies and action plans to remedy existing identified problems when L.G. became an inmate, and failed to enforce existing specific policies and procedures designed to protect women such as L.G., turning a blind eye and deaf ear to the continued likelihood of female inmates having their persons violated by guards, a known and obvious constitutional violation. Defendants proceeded with deliberate indifference to the likelihood of constitutional violations to Plaintiff.

23. L.G. was approached by Defendant RedEagle, a large and imposing person and a correctional officer, who inappropriately started grooming Plaintiff. RedEagle routinely demanded that L.G. do personal work for him, resulting in repeated "*unusual events*" such as RedEagle calling in L.G. for roll call on her behalf, when he had ordered her to be with him. The designated persons to enforce Policy P-040100, Defendants Allbaugh and McCoy, failed to enforce compliance with it, resulting in RedEagle's violations of L.G.

24. Defendant McCoy was absent often, so she a) failed to personally supervise Defendant RedEagle as her subordinate and b) failed to enforce policies such as OP 040103 designed to protect female inmates and create accountability.

25. Under policy OP-040103, "a method shall be establish to record non-routine incidents," including "*contraband*" and recording of such events and

6

pertinent information involving inmates. It states "***Supervisors are expected to review and sign the post log… at minimum, once each shift***" and to keep track of "***unusual occurrences***." The policy further states that "inmates will not have access to any control room." The facility head (Defendant McCoy) is indicated in the policy as "responsible for compliance."

26. Due to her acts and omissions, Defendant McCoy's lack of presence and failure to observe the above policies allowed RedEagle to harm Plaintiff.

27. Defendant RedEagle was able to use keys and manipulate the storage area he was in charge of, without any compliance and monitoring, to direct Plaintiff to join him there, where he was able to take advantage of her. Thus, policy P-040100 was not complied with, nor was it monitored, by either Defendant McCoy, RedEagle's supervisor, nor the other listed Defendants, also responsible for enforcement, compliance, and review of such policy. As such, Defendant RedEagle was able to repeatedly take advantage of Plaintiff L.G.

28. As a result of Defendants' failure to enforce existing policies, and as a result of Defendant Board's failure to create new plans of action and new policies after learning of deficiencies in 2018, Defendant RedEagle was able to pressure Plaintiff into inappropriate situations, requiring her to wear panties for days at a time that he kept and brought into the facility as ***contraband*** (violation of contraband policy cited herein), and pressuring Plaintiff into

sexual contact in early 2019. Plaintiff L.G. properly served a Notice of Tort Claim prior to the end of 2019, per the OGTCA.

29. Defendant Deputy Warden RedEagle is also charged in Muskogee County with bringing contraband into the prison, including panties he made L.G. wear for extended periods of time, then kept for himself to "sniff." If the contraband policy had been observed by Defendant Warden McCoy, and monitored with respect to Defendant Deputy Warden RedEagle, such policy or any of the other policies (ie. keeping track of keys and movement of female inmates), properly enforced, could have prevented constitutional violations of L.G.'s person.

30. Rapes have been occurring in Oklahoma for many years in the prison system, with corrections officers inappropriately using their position of power to sexually assault female inmates. Not only is it well known by any "reasonable correctional officer" who has finished training that he is not to have sexual relations with an inmate, but that such act is a felony, punishable at law.

31. The U.S. Department of Justice confirmed that ODOC facility Mabel Bassett had the highest prison rape rate in the United States. (See https://www.prisonlegalnews.org/news/2016/mar/7/oklahomas-mabel-bassett-correctional-center-has-highest-prison-rape-rate/, visited August 12, 2020).

32. The US Department of Justice found that 3.5 percent of the women surveyed in the Oklahoma prison had been sexually assaulted by prison staff, a number higher than the national average. *Id.*

33. Many lawsuits have been previously filed against numerous prison guards who have raped female inmates, placing all Defendants on notice of the impropriety of sexual assault of a female inmate.  Yet the problem persists, year after year.

34. Defendants knew that failing to properly protect female inmates would continue to result in female prisoners being raped, in violation of their known rights.  Defendants' failures and omissions regarding creation of new policies to protect female inmates and enforcing existing policies proximately allowed Defendant RedEagle to violate Plaintiff's person.

35. Each Defendant is individually liable under 42 US 1983 for proximately causing violations of Plaintiff's right to bodily integrity under the Fourth Amendment and the Eighth Amendment.

36. Defendant McCoy is proximately responsible for negligent supervision of Defendant Deputy RedEagle, as McCoy was his Warden, and supervisor.

37. All Defendants are proximately separately liable for "Bosh" causes of action, for violations of state constitutional rights of Plaintiff, as well as negligence within the scope of employment. *Bosh v. Cherokee Co.*, 2013 OK 9. Under Article 2 Section 30 of the Oklahoma Constitution, Plaintiff is entitled to a private cause of action for excessive force under *Bosh, supra,* ¶¶ 32-33.

Please take notice of the gargantuan physique and strength of Defendant RedEagle.

38. Scope of employment is for a jury to determine in Oklahoma, so the issue of employer ODOC's liability under the legal theories proposed,[2] including respondeat superior survives dismissal. *Nail v. Henrietta*, 1996 OK 12.

39. Plaintiff wrote a letter on March 11, 2020, offering to explain to Defendant ODOC how Defendant RedEagle was able to violate her person, so that ODOC could craft policies and procedures to protect other female inmates.

40. All Defendants (except RedEagle) turned a blind eye to Plaintiff's offer to craft policies to protect women and explain how RedEagle accomplished his outrageous actions to violate her.

41. Defendants are proximately responsible per 42 USC 1983 for violations of Plaintiff's rights guaranteed under the Fourteenth Amendment, for deliberate indifference, and for establishing a custom and practice of indifference toward protecting females such as Plaintiff, espousing a course of action failing to create protocols and failing to enforce existing protocols, for the safety of Plaintiff. Defendants' course of conduct and pattern is likely to result in further constitutional violations of other female inmates.

---

[2] Except for 42 USC 1983 – which has been construed by this Court and others as generally unable to create respondeat superior liability. It should be noted that in unique circumstances, federal courts have awarded punitive damages against a public employer if its employee acts are egregious, per 42 USC 1983.

42. By letter dated March 26, 2020, from the Risk Management Department of the Oklahoma Office of Management and Enterprise Services, the timely filed notice of tort claim by L.G. was denied.

43. In that March 26, 2020 letter was the clear rejection of L.G.'s offer to meet with Defendants and explain the failures in policy enforcement and the lack of existing protocols that could have protected her and that could protect other females. This case is timely filed within 180 days of that letter.

44. Under information and belief, ODOC, its Board, and/or Director Allbaugh, have taken out policies of insurance, securing policies with limits above and beyond the Oklahoma Governmental Tort Claims Act limits of liability.

45. Recently, the Oklahoma Supreme Court ruled against ODOC, in a case where Defendant Allbaugh was sued in his official capacity, proving ODOC may be sued in state or federal court. *See Bd of County Commissioners v. Oklahoma Dept of Corrections, Joe Allbaugh in his official capacity as Director, and Board of Corrections* (Okla. Co. Case CV-2017-684), available on OSCN.net.

46. That case, in the immediately preceding paragraph, involved a declaratory judgment action against ODOC claiming it owed money to Plaintiffs. The Oklahoma Supreme Court ruled that ODOC did in fact owe such funds.

47. Plaintiff similarly request declaratory judgment that any Defendant who has taken out an insurance policy or bond, is therefore subject to jury determination of liability up to the amount of that policy per Oklahoma law.

*See e.g.* 57 OS 504(5). It is expected such information would be captured through discovery.

48. Plaintiff also seeks injunction at the beginning of this case, prohibiting the Defendants from erasing any recordings or documents regarding this matter.

49. Jurisdictional discovery is necessary to prove the viability of Plaintiff's claims under 42 USC 1983, for injunction sought, and for declaratory judgment relief.

50. Plaintiff seeks preliminary injunctive relief in this case, and a protective order in order to receive and review <u>one administrative regulation that Defendant ODOC refuses to make available to the public (OP-040101)</u> and to determine if other individuals are identified in such policy as personally responsible for enforcement and compliance of any other administrative protocols that would have prevented the violation of L.G. to occur at the Eddie Warrior facility.

51. These Defendants have failed to act on their responsibilities, and proximately deprived Plaintiff of rights protected under the U.S. Constitution, including but not limited to: violation of Plaintiff's person, under 42 USC Section 1983.

52. Defendants have caused and/or directed and/or negligently allowed administrative employees under their control to violate Plaintiff's state rights and fail to adhere to administrative protocols, causing violation of Plaintiffs' constitutionally protected rights. Defendants' actions individually and in

concert did deprive Plaintiff of her rights, causing substantial damages, and giving rise to a cause of action in equity – permanent injunction.

53. Under the OGTCA, the State is excluded from liability for the "[p]rovision, equipping, operation or maintenance of any prison." 51 OS 155(25). However, Plaintiff would submit that *this case arises from the individual Defendants failing to act in the administratively designed, structured, operation* of the Eddie Warrior facility*, by specifically failing to enforce, administer, and comply with, the policies described herein*.

54. Plaintiff seeks a permanent negative injunction against ODOC, the Defendant Board of Corrections, and the Defendants identified as personally responsible for abovementioned policies: requiring Defendants to adhere to, enforce, draft, improve, and comply with administrative policies and procedures, existing currently to protect female inmates, and to craft policies that should exist, that would have prevented L.G. from being violated at the Eddie Warrior facility, in Muskogee, Oklahoma.

## **JURY TRIAL REQUESTED**

All of the above stated claims and causes of action arise from and form part of the same case and controversy and Plaintiff is entitled to and hereby requests a jury trial as to each and every cause of action or claim asserted herein.

## **PRAYER FOR RELIEF**

Plaintiff prays for judgment as follows:

A. Actual damages in excess of seventy-five thousand dollars ($75,000.00);

B. Compensatory damages, including, but not limited to emotional distress, mental anguish; future medical and psychological damages; pain and suffering; Punitive or exemplary damages.

C. Declaratory relief regarding the monetary liability of Defendants who have insurance policies or bonds with limits above and beyond the OGTCA limit;

D. Immediate and prospective injunctive relief as appropriate (to avoid spoliation of evidence and requiring Defendants to act according to administrative law);

F. Attorney fees, costs and such relief as the Court deems reasonable and proper.

                Respectfully submitted,

                /s/<u>E W KELLER</u>
                E.W. Keller, OBA 4918
                Henry Dalton, OBA# 15749
                KELLER, KELLER & DALTON, PC
                201 Robert S. Kerr, Suite 1001
                Oklahoma City, OK 73102
                Tel.  405.235.6693
                Fax.  405.232.3301
                Email:  kkd.law@coxinet.net

                ATTORNEYS FOR PLAINTIFF L.G.

ATTORNEY LIEN CLAIMED