IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| L.G., an individual, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-20-306-RAW |
| | ) |
| STATE OF OKLAHOMA EX REL. | ) |
| OKLAHOMA DEPARTMENT OF | ) |
| CORRECTIONS, ET AL., | ) |
| | ) |
| Defendants. | ) |

**DEFENDANTS OKLAHOMA DEPARTMENT OF CORRECTIONS, OKLAHOMA BOARD OF CORRECTIONS, MCCOY, LEWIS, MOONEYHAM AND CARLSON'S MOTION TO DISMISS WITH BRIEF IN SUPPORT**

**COME NOW** Defendants Oklahoma Department of Corrections, Oklahoma Board of Corrections, Sharon McCoy, Penny Lewis, Rabekah Mooneyham and Heather Carlson, and respectfully move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for the reason that the Complaint (Doc. 2) on file herein fails to state a claim upon which relief can be granted.

**STANDARD FOR DISMISSAL**

A complaint should be dismissed for failure to state a claim upon which relief can be granted when "it appears that the plaintiff can prove no set of facts in support that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 (10th Cir. 1997)). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State School for the Deaf & Blind*, 173 F.3d 1226 (10th Cir. 1999)).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing … entitle[ment] to relief." The required "short and plain statement" must provide "fair notice of what the … claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957), (overruled on other grounds, *Twombly*, 550 U.S. at 562-563)). In order to show an "entitlement to relief" a plaintiff must plead "more than labels and conclusions … ." *Twombly*, 550 U.S. at 555. The initial pleading must contain "[f]actual allegations [which are sufficient] to raise a right to relief above the speculative level." *Id.* In other words, the complaint must allege "enough facts to state a claim to relief that is plausible on its face[ ]" not just conceivable. *Id.* at 570. *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556); *see also Gee v. Pacheco*, 627 F.3d 1178, 1184 (10th Cir. 2010). Plaintiff must do more than make allegations of such a broad scope that they "encompass a wide swath of conduct, much of it innocent." *Robbins*, 519 F.3d at 1247. Rather, plaintiff must allege sufficient facts to "nudge[ ] their claims across the line from conceivable to plausible." *Id.* (quoting *Twombly*, 550 U.S. at 565 n. 10). Plausibility does not mean "likely to be true," it means that the allegations must be enough that if assumed to be true the plaintiff plausibly, not merely speculatively, has a claim for relief. *Id.*

## ARGUMENT AND AUTHORITY

### PROPOSITION I

**PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO COMPLY WITH FED. R. CIV. P. 8 and 10.**

Fed. R. Civ. P. 10(b) requires a Complaint to "state its claims … in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Plaintiff's Complaint is divided into five sections with the main body of the Complaint falling under the heading of "Relevant Facts and

Concerns" at ¶¶ 12-54.  This section appears to include the factual allegations which form the basis of the Complaint with passing references to causes of action interspersed throughout.  However, this format appears to be inconsistent with the spirit of Rule 10.  Plaintiff's Complaint is confusing and unfairly complicated by the fact that the claims in this matter are not listed in a "concise and direct" manner, nor is any claim listed as "a short and plain statement" as required by Fed. R. Civ. P. 8.  Defendants are ultimately left to guess or make assumptions about which allegations and causes of action are asserted against them in particular.  As the Tenth Circuit explained in *Robbins v. State of Okla., et al.*, 519 F.3d 1242 (10th Cir. 2008), in order to survive a motion to dismiss, it is important that the complaint "provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250. Plaintiff's Complaint clearly falls short of this standard.  The aforementioned defects are a direct consequence of Plaintiff's failure to comply with Fed. R. Civ. P. 8 and 10, and Plaintiff's Complaint must be dismissed as a result.

Additionally, while Fed. R. Civ. P. 10(a) requires a pleading to name all parties, Plaintiff only identifies herself in this action as "L.G" in the caption of her Complaint and throughout.  However, "[p]rodeeding under a pseudonym in federal court is, by all accounts, an unusual procedure." *Fernandez v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000) (internal quotation marks omitted).  While anonymity in court proceedings is warranted in "exceptional circumstances," no federal statute or rule supports the practice.  *Id.*  "The risk that a plaintiff may suffer some embarrassment is not enough." *Id.* (quoting *Doe v Frank*, 951 F.2d 320, 324 (11th Cir. 1992)).  The need for anonymity must "outweigh[ ] the public interest in favor of openness."  *Raiser v. Brigham Young Univ.*, 127 F. App'x 409, 411 (10th Cir. 1992). Beyond citing the stigmatization of sexual assault, Plaintiff does not articulate why she should be permitted to proceed under a pseudonym throughout this proceeding in light of the foregoing authority.  Plaintiff's claim must therefore be dismissed for failure to comply with Fed. R. Civ. P. 8 and 10.

**PROPOSITION II**

**DEFENDANTS OKLAHOMA DEPARTMENT OF CORRECTIONS AND BOARD OF CORRECTIONS ARE IMPROPER PARTIES TO PLAINTIFF'S § 1983 CLAIMS.**

Title 42 of the United States Code, at Section 1983, provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... ." The statute creates no substantive civil right. It merely provides the procedural mechanism for enforcing existing constitutional and other federal rights. *Wilson v. Meeks,* 52 F.3d 1547, 1552 (10th Cir. 1995).

To assert a claim under section 1983, a plaintiff must show, as a threshold matter, (1) a right secured by the Constitution and laws of the United States was violated, and (2) a person acting under color of state law deprived the plaintiff of the right. *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009). However, a state agency (or a subdivision thereof) is not a "person" acting under color of state law as contemplated by 42 U.S.C. § 1983. *Will v. Michigan State Police*, 491 U.S. 58 (1989). Therefore, Defendants Oklahoma Department of Corrections (DOC) and the Board of Corrections (BOC)[1] are not subject to suit under the statute.

Furthermore, state entities such as the DOC and BOC are entitled to Eleventh Amendment immunity from suit and cannot be sued for damages in federal or state court for federal constitutional violations unless the agency has consented to suit. *Garrett v. Board of Trustees of University of Alabama*, 531 U.S. 356 (2001). Defendants DOC and BOC have not consented to suit and Plaintiff has failed

---

[1] Plaintiff has not named any individual member of the Oklahoma Board of Corrections as a Defendant in this matter.

to plead otherwise. Accordingly, Plaintiff's civil rights claims must be dismissed in their entirety against Defendants DOC and BOC.

## PROPOSITION III

## PLAINTIFF'S STATE LAW CLAIMS MUST FAIL.

Plaintiff appears to have improperly asserted *Bosh* claims against each Defendant. However, for reasons more fully set forth in Defendant Redeagle's Motion to Dismiss at Doc. 13, Plaintiff's *Bosh* claims must fail. To the extent that the Court construes Plaintiff's state law claims as arising under the Oklahoma Governmental Tort Claims Act, they must fail for the following reasons:

### A.  The Individually-Named Defendants are Improper Parties.

The Oklahoma Governmental Tort Claims Act ("GTCA") requires all tort actions to be brought against the State of Oklahoma or a political subdivision and bars any action against an "employee of the state or political subdivision acting within the scope of his employment." *See* 51 O.S. § 163(C). *See also Shepherd v. CompSource Oklahoma*, 2009 OK 25, 209 P.3d 288, 294 (the state or a political subdivision's "liability for loss resulting from the torts of its employees acting within the scope of their employment ... is exclusive and in place of all other liability of an employee at common law or otherwise.") It specifically states that an action alleging a tort or violation of the Oklahoma Constitution,

> shall name as a defendant the state or political subdivision against which liability is sought to be established. In no instance in any such action shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as a defendant; provided, however, such person may be named as defendant under alternative allegations that such person did not act within the scope of employment.

51 O.S. § 153(C). *See also* 51 O.S. § 153(B).

In the above-styled action, Plaintiff asserts claims for negligence and constitutional violations against all individually-named Defendants. However, there are no allegations sufficient to support the

idea that Defendants McCoy, Lewis, Mooneyham or Carlson were acting outside the scope of their employment at any time relevant to Plaintiff's claims. In fact, at ¶ 37, Plaintiff appears to suggest that the Defendants were *within* the scope of their employment at all times relevant. Therefore, the claims against the individual Defendants are squarely prohibited as a matter of law and must be dismissed in their entirety.

**B.      The DOC and BOC are Immune from Suit.**

The Oklahoma Governmental Tort Claims Act (GTCA), as set forth at 51 O.S. §§ 151, *et seq.*, is the exclusive remedy by which an injured plaintiff may recover against a governmental entity for the alleged torts or constitutional violations of its agents and its employees. *Fuller v. Odom*, 1987 OK 64, 741 P.2d 446, 451. However, "[t]he state … shall not be liable under the provisions of The Governmental Tort Claims Act for any act or omission of an employee acting outside the scope of the employee's employment." 51 O.S. § 153(A). The GTCA also says "[t]he State, its political subdivision, and all of their employees acting within the scope of their employment, whether performing governmental or proprietary functions, shall be immune from liability for torts" unless immunity has been specifically waived. 51 O.S. § 152.1(A).

Scope of employment is defined as "performance by an employee acting in good faith within the duties of the employee's office or employment or of tasks lawfully assigned by a competent authority … but shall not include corruption or fraud." 51 O.S. § 152(12). In *Nail v. City of Henryetta,* 1996 OK 12, 911 P.2d 914, the Oklahoma Supreme Court held that "one acts within the scope of employment if engaged in work assigned, or if doing that which is proper, necessary and usual to accomplish the work assigned, or doing that which is customary within the particular trade or business." *Id.* at 917. *Nail* specifically held that "it is not within the scope of an employee's employment to commit an assault on a third person." *Id.* at 918. An employee exceeds the scope of employment only when his or her conduct is "so extreme as to constitute a clearly unlawful usurpation

6

of authority the officer does not rightfully possess." *Tuffy's, Inc. v. City of Oklahoma City,* 2009 OK 4, 212 P.3d 1158, 1167. "When a tort cause of action sued upon requires proof of an element that necessarily excludes good faith conduct on the part of employees, there can be no liability against a political subdivision in a suit based on the GTCA. This is because the GTCA explicitly excludes bad faith action from its definition of the scope of employment, and a political subdivision is relieved from liability for tortious conduct committed by its employees outside the scope of employment." *Id.* at 1164. In this case, Plaintiff's allegations, if true, indicate that Defendant Redeagle exceeded the scope of his employment when her tort claims alleged arose. Accordingly, the State of Oklahoma is not liable for the conduct attributable to Defendant Redeagle.

With regard to Defendants McCoy, Lewis, Mooneyham and Carlson, Plaintiff has *not* alleged any facts to suggest that they were acting outside the duties of their office or otherwise engaged in fraud or corruption when the instant claim arose. *See* Complaint at ¶ 37, where Plaintiff seems to suggest that all Defendants were acting within the scope of employment. Accordingly, the DOC and BOC are immune from suit with regard to these Defendants' conduct and this case must be dismissed.

Plaintiff likely takes the erroneous position that the State of Oklahoma has waived immunity from suit under the GTCA and is therefore liable for the injuries allegedly attributable to Defendants McCoy, Lewis, Mooneyham and Carlson. However, Plaintiff misunderstands the very narrow scope of any waiver of immunity as defined at 51 O.S. § 155. Specifically, "when the legislature expressly provides for an exemption from liability" a governmental entity is still sovereignly immune from tort liability. *McCathern v. City of Oklahoma City*, 2004 OK 61, 95 P.3d 1090, 1097. *See also JMA Energy Co., LLC v. State ex rel. Dep't of Transp.*, 2012 OK CIV APP 55, 278 P.3d 1053. That is precisely the scenario presented to this Court. Specifically, the GTCA, at 51 O.S. § 155, sets forth specific exemptions to liability which preclude Plaintiff's claims.

7

The exemption most obviously applicable is at 51 O.S. § 155(25), which preserves immunity for the Oklahoma Department of Corrections on claims arising from the "[p]rovision, equipping, operation or maintenance of any prison, jail or correctional facility… ." This exemption has been the subject of interpretation on more than one occasion by our appellate courts. In *Medina v. State of Oklahoma,* 1993 OK 121, 817 P.2d 1379, the Oklahoma Supreme Court defined this exemption using the plain and ordinary meaning of the operative words "provision," "equipping," "operation" and "maintenance" of a prison. *Id.* at 1382. The Court concluded that this exemption encompassed "all activity involved in the performance of policy." *Id.* at 1383. Specifically, regarding the scope of the exemption, *Medina* stated as follows:

> Reading the three clauses of § 155(23) together reveals an intent to withhold the waiver of sovereign immunity for any loss or injury, whether to an inmate or other person, resulting from the operational level acts required to furnish the services of a penal institution, including the construction and repair of the facility; the security of the facility; the employment of personnel; the utilities and furnishings of the facility; the food, clothing, items for hygiene and other basic personal items needed by inmates or other persons; the educational, rehabilitative, communicational, recreational and medical and health services or any other service provided for inmates or other persons; the assignment of an inmate to a facility or a cell; and the release of an inmate; with the single exception of loss to persons not in custody caused by an accident involving a motor vehicle operated by the Department of Corrections.

*Id.* at 1384, n.13. Additionally, 51 O.S. § 155(4) states that the Department of Corrections is exempt from liability for claims arising from the failure to enforce its own policies. These policies necessarily include those identified in the Complaint as having been allegedly violated.

For the foregoing reasons, this Court must find that Defendants DOC and BOC are exempt from liability for Plaintiff's claims stemming from the conduct of Defendants McCoy, Lewis, Mooneyham and Carlson. Furthermore, because the claims against Defendant Redeagle involve alleged conduct that would have fallen outside the scope of his employment if true, the DOC and BOC are not liable under the GTCA for his actions. Plaintiff's claims arising under the Oklahoma Governmental Tort Claims Act must therefore be dismissed against Defendants DOC and BOC.

## PROPOSITION IV

### PLAINTIFF'S POLICY VIOLATION CLAIMS MUST FAIL.

Plaintiff alleges throughout her Complaint that Defendants violated her constitutional rights because they failed to follow or enforce various policies that she believes would have prevented her alleged sexual assault. However, it is well settled that creation of a prison policy does not, in and of itself, create a constitutional right to that procedure or its implementation in any particular manner. DOC operations memoranda are not designed to, and do not confer any additional rights unto any prisoner greater than those authorized by statute or protected by the Constitution. Instead, DOC procedures are implemented to "aspire to instruct subordinate employees how to exercise discretion vested by the state in the [Director], and to confine the authority of [department] personnel in order to avoid widely different treatment of similar incidents." *Sandin v. Conner*, 515 U.S. 472, 482 (1995). To find that agency procedures confer a right "creates [the very] disincentives" warned of in *Sandin*. *Id.* DOC created procedures to give guidance to staff in the day-to-day operations of the agency in situations that involve discretion. Those same procedures cannot be used to create a right beyond what is authorized by the Constitution. The present claim is tantamount to "prisoners comb[ing] regulations in search of mandatory language on which to base entitlements to various state-conferred privileges." *Id.* at 481. Accordingly, the Defendants' failure to follow specific policies does not in and of itself run afoul of the constitution. Plaintiff's policy claims must therefore fail.

## PROPOSITION V

### DEFENDANTS MCCOY, LEWIS, MOONEYHAM AND CARLSON DID NOT PERSONALLY PARTICIPATE IN A CONSTITUTIONAL VIOLATION.

As a general rule, "[i]ndividual liability under [42 U.S.C.] § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citing *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996)); *Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a Section 1983 claim."

(citations omitted)). A plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the constitution. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). There must be an affirmative link between the alleged constitutional violation and the defendant's own participation or failure to supervise. *Serna v. Colorado Dept. of Corrections*, 455 F.3d 1146, 1151–52 (10th Cir. 2006). Furthermore, government officials have no vicarious liability in a § 1983 suit for the misconduct of their subordinates, such as prison staff, because "there is no concept of strict supervisor liability under section 1983." *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir. 1996) (quotation omitted). In other words, § 1983 does not authorize liability under a theory of respondeat superior. *Brown v. Montoya,* 662 F.3d 1152, 1164 (10th Cir. 2011).

In this case, Plaintiff repeatedly clams that Defendants violated her constitutional rights because Defendant Redeagle assaulted her. Plaintiff, however, fails to allege that Defendants *themselves* personally participated in any unconstitutional activity. Plaintiff merely alleges that Defendants supervised Defendant Redeagle and oversaw prison policy implementation. Accordingly, Plaintiff's claims must fail as it is clear that Defendants did not, themselves, personally participate in any constitutional violation against Plaintiff in their respective roles.

## PROPOSITION VI

### DEFENDANTS DID NOT VIOLATE PLAINTIFF'S EIGHTH AMENDMENT RIGHTS.

Plaintiff's claims are best characterized as conditions of confinement claims and analyzed under the deliberate indifference standard. *Castillo v. Day*, 790 F.3d 1013, 1018-1019 (10th Cir. 2015). An Eighth Amendment deliberate indifference claim has two components: (1) an objective prong that asks if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and (2) a subjective prong under which the plaintiff must show that the prison officials acted with a sufficiently culpable state of mind. *Id.* Under the objective component, the deprivation must be sufficiently serious, with the prison official's act or omission resulting in the denial of the minimal

civilized measure of life's necessities. *Farmer v. Brennan,* 511 U.S. 825, 834. Under the subjective component, the prison official must have acted with a sufficiently culpable state of mind, namely "deliberate indifference to inmate health or safety." *Id.* In this regard, deliberate indifference is established only when a prison official knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate that harm. *Id.* at 837-38. *See also Callahan v. Poppell,* 471 F.3d 1155, 1159 (10th Cir. 2006). Specifically, under the subjective prong, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm to the prisoner exists, and he must also draw the inference." *Id.* at 837. Deliberate indifference requires "a higher degree of fault than negligence, or even gross negligence," but is less than the intentional and malicious infliction of injury standard in *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986). *See also Berry v. City of Muskogee.*, 900 F.2d 1489, 1496 (10th Cir. 1990).

Plaintiff's deliberate indifference claim turns on the theory that various prison officials, whose offices are located throughout the State of Oklahoma, failed to follow or enforce certain broadly-applicable prison policies, which created an opportunity for her to be assaulted at a prison in Taft, Oklahoma. In support of her claims, Plaintiff cites DOC Policy P-010200 ("Operating Procedures and Policies for the Oklahoma Board of Corrections") at part I.A.1 for the proposition that Defendant Board of Corrections is responsible for the "[e]stablishment of policies." Exhibit 1[2]. Plaintiff also cites Policy P-040100 ("Security Standards for the Oklahoma Department of Corrections") for the broad idea that the Oklahoma Department of Corrections, through its Director, is responsible for implementing security standards at prison facilities. Exhibit 2. Plaintiff additionally cites OP-040103

---

[2] Pursuant to *Thomas v. Kaven*, 765 F.3d 1183, 1197 (10th Cir. 2014), "[a] district court may consider documents (1) referenced in a complaint that are (2) central to a plaintiff's claims, and (3) indisputably authentic when resolving a motion to dismiss without converting the motion to one for summary judgment."

11

("Standards for Maintenance of Logs") for the argument that prison facilities, through their respective wardens, are required to maintain logs on various matters such as contraband, kitchen utensils, tools and keys. Exhibit 3. Yet, Plaintiff merely speculates that an alleged failure to follow the referenced policies played some role in allowing the harm that has been alleged in this matter. This falls short of the deliberate indifference standard, which requires Defendants' conduct to be the ***cause*** of the constitutional violation, not merely a contributing factor. *Tafoya v. Salazar*, 516 F.3d 912, 916 (10th Cir. 2008). *See also Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), which requires allegations in support of a right to relief to be more than just speculation.

Furthermore, Plaintiff has failed to allege that any Defendant knew she was being harmed or that they were aware of any facts that would have allowed them to draw such an inference. To support her claims that Defendants were on notice that she was at risk of assault, Plaintiff loosely references a performance audit that characterizes state prisons as "dangerous" but is otherwise devoid of any indication that inmates were at risk of the harm alleged in the instant Complaint. Exhibit 4. Notably absent from the Complaint is any allegation that Plaintiff herself attempted to alert prison officials to the harm she allegedly sustained by availing herself of the prison's grievance process[3] or informing them otherwise. In fact, Plaintiff has wholly failed to allege any Defendant *knew* she was in danger and disregarded the risk, as required to state a claim for deliberate indifference. *See Farmer v. Brennan,* 511 U.S. 825, 837 (1994). With the exception of Defendant McCoy, the individually-named Defendants did not even work at the prison facility where Plaintiff was allegedly assaulted, and there is absolutely no indication in the Complaint that they were on notice of any specific policy violations

---

[3] *See Tishkof v. Fallin*, CIV-17-421-RAW-SPS, 2019 WL 1413754, at *3 (E.D. Okla. Mar. 28, 2019) for a thorough explanation of the prison's administrative grievance process, which Plaintiff could have used to alert the Warden of her alleged concerns regarding Defendant Redeagle.

and related harm allegedly occurring at the Taft, Oklahoma facility.[4] As for Defendant McCoy - the Warden at the facility where Plaintiff's claims allegedly arose - the Plaintiff's criticisms of her management style and absenteeism are best categorized as negligence claims that do not rise to the level of a constitutional violation. *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999).

In sum, Plaintiff has clearly failed to state a claim for an Eighth Amendment violation, and her claims must be dismissed.

## PROPOSITION VII

### PLAINTIFF IS NOT ENTITLED TO DECLARATORY OR INJUNCTIVE RELIEF.

For reasons more fully set forth above, Plaintiff has failed to state a claim for a constitutional violation. Plaintiff's request for declaratory and injunctive relief must accordingly be denied since there is no ongoing constitutional violation. *Green v. Mansour*, 474 U.S. 64 (1985).

## PROPOSITION VIII

### DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY.

This Court must find that Defendants McCoy, Lewis, Mooneyham and Carlson are entitled to qualified immunity. A public official or employee is entitled to qualified immunity unless "clearly established" federal rights of which a reasonable person would have known are shown to have been violated. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "Clearly established" is predicated on a finding that in light of pre-existing law the unlawfulness is apparent. *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. It is an immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth,* 472 U.S. 511, 527 (1985). It is effectively lost if a case is erroneously permitted to proceed to trial. *Hannula v. City of Blakely,* 907 F.2d 129, 130 (10th Cir. 1990).

---

[4] *See* summons, indicating that Defendants Carlson, Lewis and Mooneyham were each served in the Department of Corrections' offices located in Tulsa, Oklahoma. Docs. 5, 7 and 9.

Once a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to demonstrate that (1) the defendant violated one of his constitutional rights, and (2) the right in question was clearly established at the time of the allegedly unlawful activity such that "every reasonable official would have understood that what he [was] doing" violated the law. *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012). The court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

"[I]n order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver,* 960 F.2d 1493, 1498 (10th Cir. 1992). The contours of the invoked right must be sufficiently clear such that objectively reasonable state officers would understand that what they are doing violates that right. *Roska ex rel. Roska v. Peterson,* 328 F.3d 1230, 1247 (10th Cir. 2003). "[T]he touchstone of [this] inquiry is whether the officers [were] on notice [that] their conduct [was] unlawful." *Id.* at 1248 (citations and quotations omitted). Thus, if the plaintiff has alleged a constitutional violation <u>and</u> has met his burden to establish that the law on the subject is clearly established, plaintiff must further show that a reasonable official would have known that his actions would violate clearly established law.

> In considering the "reasonable state actor," we must keep in mind that qualified immunity precludes the imposition of liability for 'all but the *plainly incompetent* or those who knowingly violate the law.' *Malley v. Briggs,* 475 U.S. 335, 341 (1986) (emphasis added). Where "officers of reasonable competence could disagree on th[e] issue, immunity should be recognized." *Id. at 341*.

*Id.* at 1251.

In *Mullenix v. Luna,* 577 U.S. 7 (2015), the Supreme Court reiterated that the question of qualified immunity turns on whether the unconstitutionality of "particular conduct" in a "specific context" is clearly established. *Id.* at 11-12. The Supreme Court also reiterated that clearly established law should not be defined at a high level of generality. *Id.*

14

As more fully set forth at Propositions IV, V and VI, *supra*, Plaintiff can't meet her burden of demonstrating that Defendants violated her constitutional rights. In the alternative and in light of the cited authority, Plaintiff cannot demonstrate that any clearly established law would have put Defendants on notice that she had a constitutional right to enforcement of certain prison policies or that Defendants' conduct rose to the level of deliberate indifference. Defendants McCoy, Lewis, Mooneyham and Carlson are therefore entitled to qualified immunity.

## CONCLUSION

For the foregoing reasons, Plaintiff fails to state a claim upon which relief can be granted and her claims must be dismissed.

Respectfully submitted,

/s/ Kari Y. Hawkins
**KARI Y. HAWKINS, OBA #19824**
Assistant Attorney General
Oklahoma Attorney General's Office
313 NE 21st Street
Oklahoma City, OK 73105
Telephone: (405) 521-3921
Facsimile: (405) 521-4518
Email: Kari.Hawkins@oag.ok.gov
*Attorney for Defendants Oklahoma Department of Corrections, Board of Corrections, McCoy, Lewis, Mooneyham and Carlson*

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of November, 2020, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of the Notice of Electronic Filing to the following ECF registrants:

E.W. Keller
Henry Dalton
Keller, Keller & Dalton, P.C.
201 Robert S. Kerr, Suite 1001
Oklahoma City, OK 73102

Anthony L. Allen
106 S. Okmulgee Ave.
Okmulgee, OK 74447

/s/Kari Y. Hawkins
Kari Y. Hawkins