# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)L LAURIE GARLAND., an individual     ) | |
|               Plaintiff,     ) | |
| v.     ) | Case *No. CIV 2020-306-RAW* |
|     ) | |
| (1) STATE OF OKLAHOMA EX REL     ) | |
| OKLAHOMA DEPARTMENT OF     ) | |
| CORRECTIONS,     ) | |
| (2) CHRISTOPHER REDEAGLE, individually ) | |
| (3) SHARON MCCOY, individually     ) | |
| (4) JOE ALLBAUGH, Individually     ) | |
| (5) PENNY LEWIS, Individually     ) | |
| (6) RABEKAH MOONEYHAM, individually ) | |
| (7) HEATHER CARLSON, individually     ) | |
| (8) BOARD OF CORRECTIONS     ) | |
|               Defendants     ) | |

## AMENDED COMPLAINT

COMES NOW, Laurie Garland (L. G).,[1] individually and for her Complaint

and against the listed Defendants alleges and states as follows:

## PARTIES

1. Plaintiff L.G. was incarcerated in the Eddie Warrior prison facility, in

   Muskogee Oklahoma, for a dui charge, at all relevant times, in late 2018-

   2019.

2. Defendant Oklahoma Department of Corrections (ODOC) is a state agency

   tasked with housing and rehabilitating inmates, and maintains Eddie Warrior

   correctional facility in Muskogee where L.G. was an inmate. ODOC created

   and published policies and procedures for the protection of inmates, *inter*

---

[1] Due to the stigmatization of sexual assault, Plaintiff asks that her initials be used throughout this matter.

*alia.*

3. Defendant Deputy Warden RedEagle was a correctional officer at Eddie Warrior at all relevant times and a resident of Muskogee County. The Muskogee DA has charged RedEagle with lewd molestation of L.G. , and under information and belief, RedEagle has beeen terminated from employment as his actions amounted to statutory rape, inappropriate abuse of his position of power, contrary to Oklahoma law, regulatory law, policies and procedures created by the Defendant Board of Corrections. RedEagle's actions to groom and force himself on Plaintiff sexually did not advance his employer's agenda in any way and is prohibited under employment protocol.

4. Defendant Sharon McCoy was the warden supervising Defendant RedEagle, personally responsible for enforcing compliance with specific policies relevant to this matter, and overseeing him as his supervisor, at Eddie Warrior.

5. Defendant Joe Allbaugh is the executive director of the Oklahoma Department of Corrections, personally tasked with implementation of specific policies relevant to this matter.

6. Defendants Lewis, Mooneyham, and Carlson, comprise of the Compliance Unit employees for the Oklahoma Department of Corrections, that unit being tasked with enforcement of specific policies relevant to this matter.

7. Defendant Board is a group of individuals, who regularly meet, and approve expenditures and protocols for the Oklahoma Department of Corrections, and

were specifically tasked with drafting policies and procedures and overseeing the enforcement and compliance of specific policies relevant to this matter.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, as factual claims and allegations asserted herein arose under 42 U.S.C. §1983.

9. Further, this Court has subject matter jurisdiction in that Plaintiffs' rights guaranteed under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution were violated by Defendants.

10. All factual claims and allegations asserted herein arose entirely within the Eastern District of Oklahoma and venue is proper in this district.

11. Plaintiff is entitled to attorney fees and costs pursuant 42 U.S.C. §1988, as this action is brought to enforce provisions of 42 U.S.C. §1983, and including injunctive relief, always available against any Defendant. After discovery, Plaintiff also seeks declaratory judgment that certain Defendants insurance policies create statutory liability above and beyond state Tort Claim limits. Plaintiff also seeks declaratory judgment that Defendants' acts and omissions are unconstitutional and/or unlawful, and contrary to their administratively adopted policies and procedures, and/or likely to lead to known constitutional violations of persons in Plaintiff's position. Plaintiff seeks pendent state claims.

## RELEVANT FACTS AND CAUSES OF ACTIONS

## EXISTING TENTH CIRCUIT LAW KNOWN TO DEFENDANTS

# REGARDING STATUTORY RAPE

12. Plaintiff L.G. had a known constitutional right not to be raped by a correctional officer. *See Keith v. Koerner (Keith II)*, 843 F.3d 833, 837 (10th Cir. 2016) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." (alteration in original) (*quoting Hovater v. Robinson*, 1 F.3d 1063, 1068 (10th Cir. 1993). All correctional officers and administrators of the prisons in Oklahoma are taught that correctional officers may not date and have sexual relations with inmates, such acts being criminal.

13. Defendants, each of them, knew of L.G.'s above rights, as each Defendant participated in drafting, acknowledgeing, discussing, and had a duty to enforce policies and procedures drafted to prevent female inmates from being violated.

> "It is clearly established that a prion official's deliberate indifference to sexual abuase by prison employees violates the Eighth Amendedment". *Keith v. FCoemer (Keith I), 707 F. 3d 1185, 1188 (10th Cir. 2013.) We have further concluded 'an inmate has a constitutial right to be secure in her body *850 integrity and free from accack by prison guards.' And 'a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation.' Hovater, 1 F.3d at 1068. In other words, 'prison officials . . . must 'take reasonable measures to guaerantee the safety of inmates.' Farmer 511U.S. at 832. 114 S.Ct. 1970 (quoting Hudson v. Palmer, 468 U*.S. 517, 526-27, 104 S.Ct. 3194, 82 L.2d.2d 393 (1984)"*

## DELIBERATE INDIFFERENCE
## PROXIMATELY CAUSING FOURTH
## AMENDMENT VIOLATION

14. Defendant McCoy was aware that RedEagle is a large man, imposing in stature, and had a position of authority in the prison vis-à-vis Plaintiff.

15. Defendant McCoy was made aware that RedEagle was spending an excessive amount of time with Plaintiff, in plain sight, in violation of policies, procedures, regulations and failed to take appropriate action to protect her.

16. The Policies and procedures exist purportedly for the protection of inmates, and after witnessing Defendant RedEagle manipulate Plaintiff's time with him in an unregular fashion, Defendant McCoy proceeded with deliberate indifference to the well-being of Plaintiff.

17. Defendant McCoy had information made known to her that Plaintiff was wearing panties other than the prison issued garb, and knew that something was wrong eventually moving Plaintiff to be away from Defendant RedEagle.

18. However, RedEagle was able to manipulate Plaintiff's work and schedule to sexually assault her, and have her wear underwear that he brought into the prison for her to wear for a week at a time, so he could later "sniff" them.

19. In lieu of protecting Plaintiff Defendant McCoy and others turned a blind eye to RedEagle's inappropriate manipulation of Plaintiff's time and roster roll call, so he could continue to physically take advantage of her and harass her.

20. When law enforcement entered RedEagle's home, after Plaintiff had been

sexually assaulted, RedEagle opened up his safe which had multiple worn, soiled women's panties, begging the question how long had he been getting away with his egregious and disturbing conduct.

21. The remaining Defendants did not enforce the below policies at Eddie Warrior, and acted with deliberate indifference to the safety of Plaintiff by not enforcing compliance with the below policies, created to protect Plaintiff.

## II.     DEFENDANT ALLBAUGH IN HIS INDIVIDUAL CAPACITY AND DEFENDANT MCCOY ARE PROXIMATELY RESPONSIBLE FOR VIOLATING PLAINTIFF'S CIVIL RIGHTS UNDER SECTION 1983 FOR FAILING TO ENFORCE ADMINISTRATIVE LAW THAT WOULD HAVE PROTECTED PLAINTIFF

22. Defendant Allbaugh is the agency Director for ODOC. Policy P-040100 (Exhibit 1) is titled "Security Standards" and states that the ODOC "provides security at all institutions… security standards are established *to protect … inmates*." The agency director, ***Defendant Allbaugh***, per section II of the policy, "***is responsible for compliance with this policy***." (emphasis added).

23. *Inter alia*, Policy P-040100 requires "compliance monitoring of internal and external security" including "inventory and control of: a) ***Keys*** …."

24. ODOC Policy P-040100 also required security standards at Eddie Warrior for "transportation of inmates…post orders to include staff review and the recording of routine and ***unusual events*** in post logs… control of inmate/offender movement… provisions for facility staffing to ensure 24 hour continuous coverage." Defendant Allbaugh failed to maintain, enforce, and direct compliance with this policy, resulting in constitutional violation of

Plaintiff's person at Eddie Warrior.

25. Defendant Allbaugh specifically is listed as directly responsible for "compliance" with this policy, and Defendant McCoy was also responsible for review, supervision, and direct enforcement thereof as the head of the facility.

**III. DEFENDANT ALLBAUGH IN HIS INDIVIDUAL CAPACITY, DEFENDANTS LEWIS, MOONEYHAM, AND CARLSON, AND DEFENDANT BOARD OF CORRECTIONS ARE PROXIMATELY LIABLE FOR FAILING TO ENFORCE P-010200, AN ADMINISTRATIVE LAW, PROXIMATELY RESULTING IN VIOLATION OF PLAINTIFF'S CONSTITUTIONAL RIGHT NOT TO BE MOLESTED BY DEPUTY WARDEN**

26. Policy P-010200 (Exhibit 2) states that the Defendant Oklahoma Board of Corrections will "*establish and maintain*" written policies and procedures for ODOC. "The agency director [Defendant Allbaugh] is responsible for compliance with this policy," as stated in section VI of the policy.

27. On its website, the ODOC indicates that its "Auditing and Compliance Unit" "shall be responsible for the issuance and review of policies and procedures issued by the Board of Corrections/Director of the Oklahoma Department of Corrections." Thus, Defendants Lewis, Mooneyham and Carlson were responsible for both issuance and review of policies regarding female inmates.

28. On its website, ODOC states that the Defendant Board is "the governing body for the Department…[m]embers are responsible for *establishing and*

*reviewing policies*, appointing the Director and confirming the appointment of wardens or unit heads." (Exhibit 3)  As such, the Defendant Board was proximately responsible for creating policies and enforcing policies involving Defendants McCoy, Lewis, Mooneyham, and Carlson, which proximately affected the oversight of Defendant RedEagle and his ability to have violated Plaintiff's constitutional rights, under the Fourth, Eighth, and Fourteenth Amendments.

29. Under ODOC Policy P 01200 (attachment "A"), (Exhibit 4) the Defendant Board of Corrections is to provide "effective oversight" and under Section "D" "essential duties," paragraph "10" to "*establish policies*."

30. Because these Defendants were aware of the purpose of such policy was to protect female inmates, and that failure to enforce such policy could likely result in a Constitutional Violation of Plaintiff's person, these Defendants are proximately liable under Section 1983 for proceeding under a custom, policy, and program of not following, complying with, and enforcing the stated administrative procedure, they are proximately liable for 1983 harm to Plaintiff.

**IV.    DEFENDANTS ALLBAUGH, BOARD OF CORRECTIONS, ARE PROXIMATELY RESPONSIBLE FOR FAILING TO CREATE POLICY AND PROCEDURE UNDER THEIR ADMINISTRATIVE RULEMAKING, AFTER BEING MADE AWARE IN 2018 OF DEFICIENCIES IN OPERATIONS, LIKELY TO RESULT IN CONSTITUTIONAL VIOLATIONS TO FEMALE INMATES, THUS TURNING A BLIND EYE TO CIVIL RIGHTS VIOLATIONS**

31. In 2018, the consulting firm of Alvarez & Marsal published a comprehensive

"Efficiency Review" of ODOC, visiting facilities and conducting anonymous surveys with employees. (Exhibit 5) The 2018 results indicate that Defendants failed to have proper staffing, proper procedures to track inmates, that the current software system is outdated, and ***facilities are "dangerous to operate***."

32. In light of such information being provided to all Defendants in 2018, Defendants failed to implement new policies and action plans to remedy existing identified problems when L.G. became an inmate, and failed to enforce existing specific policies and procedures designed to protect women such as L.G., turning a blind eye and deaf ear to the continued likelihood of female inmates having their persons violated by guards, a known and obvious constitutional violation. Defendants proceeded with deliberate indifference to the likelihood of constitutional violations to Plaintiff.

## V.  DEFENDANT ALLBAUGH IN HIS INDIVIDUAL CAPACITY AND DEFENDANT MCCOY FAILED TO ENFORCE POLICY 40103, PROXIMATELY CREATING A SEXUAL HARASSMENT ENVIRONMENT AND REDEAGLE'S ABILITY TO VIOLATE NUMEROUS POLICIES WITHOUT ACCOUNTABILITY, AND ULTIMATELY COMMIT STATUTORY RAPE, AND VIOLATION OF PLAINTIFF'S PROTECTED CONSTITTIONAL RIGHTS KNOWN TO ALL DEFENDANTS, TRIGGERING SECTION 1983 LIABILITY

33. L.G. was approached by Defendant RedEagle, a large and imposing person and a correctional officer, who inappropriately started grooming Plaintiff. RedEagle routinely demanded that L.G. do personal work for him, resulting in repeated "*unusual events*" ." He snuck her into closets and rooms over

which he had control and/or key access to, closed blinds in front of other inmates and his superiors, and personally called her in late to roll call, so that he cold sexually assault her. She was frightened and overpowered and complied.

34. RedEagle regularly called in L.G. for roll call on her behalf, when he had ordered her to be with him. The designated persons to enforce Policy P-040103 (Exhibit 6) , Defendants Allbaugh and McCoy, failed to enforce compliance with it, resulting in RedEagle's violations of L.G.

35. Defendant McCoy was absent often, so she a) failed to personally supervise Defendant RedEagle as her subordinate and b) failed to enforce policies such as OP 040103 designed to protect female inmates and create accountability.

36. Under policy OP-040103, "a method shall be establish to record non-routine incidents," including "***contraband***" and recording of such events and pertinent information involving inmates. It states "***Supervisors are expected to review and sign the post log… at minimum, once each shift***" and to keep track of "***unusual occurrences***." The policy further states that "inmates will not have access to any control room." The facility head (Defendant McCoy) is indicated in the policy as "responsible for compliance."

37. Due to her acts and omissions, Defendant McCoy's lack of presence and failure to observe the above policies allowed RedEagle to harm Plaintiff.

38. Defendant RedEagle was able to use keys and manipulate the storage area he was in charge of, without any compliance and monitoring, to direct Plaintiff

to join him there, where he was able to take advantage of her. . RedEagle stole property that was in storage areas he was in charge of, and sold it,[2] took Plaintiff into areas and pulled blinds down, brought underwear into the prison that he demanded she wear for over a week at a time, then give to him, wrote her love letters disguizing his name, and ultimately forced her to commit sexual acts with him.

39. Thus, policy P-040100 (Exhibit 1) was not complied with, nor was it monitored, by either Defendant McCoy, RedEagle's supervisor, nor the other listed Defendants, also responsible for enforcement, compliance, and review of such policy. As such, Defendant RedEagle was able to repeatedly take advantage of Plaintiff L.G., sexually harassing her and traumatizing her.

40. As a result of Defendants' failure to enforce existing policies, and as a result of Defendant Board's failure to create new plans of action and new policies after learning of deficiencies in 2018, Defendant RedEagle was able to pressure Plaintiff into inappropriate situations,

41. Plaintiff was frightened and complied with his wishes, given the fact he controlled her work duties and ordered her around.

42. RedEagle required her to wear panties for days at a time that he kept and brought into the facility as *contraband* (violation of contraband policy cited herein), ReadEagle pressured Plaintiff into sexual contact in early 2019

---

[2] Indicative of the fact that Defendant McCoy and the other Defendants failed to enforce, audit, and require compliance with the specific aministrative policies and procedures herein, created to protect female inmates from possible constitutional violations of their persons as well as sexual harassment by prison guards, and for their own safety (as the policies themselves indicate).

forcing his penis on her and for her to pleasure him inside a room in the prison.

43. Defendant Deputy Warden RedEagle is also charged in Muskogee County with bringing contraband into the prison, including panties he made L.G. wear for extended periods of time, then kept for himself to "sniff." If the contraband policy and Exhibit 6 had been observed by Defendant Warden McCoy, and monitored with respect to Defendant Deputy Warden RedEagle, such policy or any of the other policies identified (ie. keeping track of keys and movement of female inmates), properly enforced, would have prevented constitutional violations of L.G.'s person.

44. Rapes have been occurring in Oklahoma for many years in the prison system, with corrections officers inappropriately using their position of power to sexually assault female inmates. Not only is it well known by any "reasonable correctional officer" who has finished training that he is not to have sexual relations with an inmate, but that such act is a felony, punishable at law.

45. The U.S. Department of Justice confirmed that ODOC facility Mabel Bassett had the highest prison rape rate in the United States. (See https://www.prisonlegalnews.org/news/2016/mar/7/oklahomas-mabel-bassett-correctional-center-has-highest-prison-rape-rate/, visited August 12, 2020).

46. The US Department of Justice found that 3.5 percent of the women surveyed

in the Oklahoma prison had been sexually assaulted by prison staff, a number higher than the national average. *Id.*

47. Many lawsuits have been previously filed against numerous prison guards who have raped female inmates, placing all Defendants on notice of the impropriety of sexual assault of a female inmate.  Yet the problem persists, year after year.

48. Defendants knew that failing to properly protect female inmates  would continue to result in female prisoners being raped, in violation of their known rights.  Defendants' failures and omissions regarding creation of new policies to protect female inmates and enforcing existing policies proximately allowed Defendant RedEagle to violate Plaintiff's person.

49. Each Defendant is individually liable under 42 US 1983 for proximately causing violations of Plaintiff's right to bodily integrity under the Fourth Amendment and the Eighth Amendment.

**VI. OGTCA APPLIES AND WAS COMPLIED WITH, AND THE EXEMPTION FOR IMMUNITY DOES NOT APPLY TO SUPERVISORY NEGLIGENCE AND RESPONDEAT SUPERIOR, AS DEFENDANTS HAVE ADMITTED THAT REDEAGLE WAS NOT IN THE SCOPE OF HIS EMPLOYMENT IN COMMITTING STATUTORY RAPE – OGTCA CLAIM AGAINST ALL DEFENDANTS FOR NEGLIGENCE, NEGLIGENT SUPERVISION, AND NEGLIGENT ENFORCEMENT**

50. Plaintiff L.G. properly served a Notice of Tort Claim prior to the enid of 2019, per the OGTCA.

51. On December 27, 2019, the Defendants' agent at OMES wrote a letter

acknowledging receipt of a properly tendered Notice of Tort Claim and asking for supporting documentation. Exhibit 7.

52. In response, on March 11, 2020, Plaintiff sent a letter to OMES explaining the systemic problem at Eddie Warrior causing women to be taken advantage of, attached proof of Deputy Warden RedEagle's criminal prosecution by the Muskogee DA, attached some of his inappropriate letters, and offered to meet with the Defendants' and the Department of Correction to explain exactly how RedEagle violated the policies without accountability, and how he was able to sexually assault her.

53. Plaintiff offered to privately meet with Defendants to provide such information in order to prevent other female inmates from also being raped. Exhibit 8.

54. On March 26, 2020, Defendants sent back a letter to Plaintiff stating that RedEagle was outside the scope of his employment and that as a result the Defendants were not liable for his harming her, and refusing her offer to provide explanation to the Department of Corrections as to how he was able to sexually assault her in light of the numerous protocols in place that were not being followed. Exhibit 9.

55. Exhibit 8 clearly identifies the fact that the Defendant Board and Defendant Allbaugh need to create a policy to protect female inmates in Plaintiff's position, and that their existing policies were not being followed and enforced, proximately resulting in negligent supervision of RedEagle at the

Eddie Warrior facility who was able to commit a crime and violate Plaintiff.

56. Defendants in Exhibit 9, state that Defendant RedEagle was NOT in the scope of his employment, and refuse Plaintiff's good faith offer to meet and discuss the calculated actions RedEagle took to violate policies and avoid detection by his superiors.

57. As such, Defendants, through Exhibit 9, portray deliberate indifference to the rights of female inmates at Eddie Warrior by not wanting to learn how RedEagle was able to sexually assault Plaintiff. Defendants' choice to avoid a good faith discussion from Plaintiff to create protocols and to protect other potential victims, indicates deliberate indifference to solving the problem of sexual assault that occurred to Plaintiff at Eddie Warrior by the very Deputy Warden who was positioned there to enforccfe the law and protect inmates!

58. Because Exhibit 9 removes the Defendants from the immunity provisions of the OGTCA (not in scope of employment) and because allowing a Deputy Warden to participate in a calculated set of disturbing actions including statutory rape, is NOT considered administration of a prison, Defendants McCoy, Allbaugh, and the Board are proximately liable under the OGTCA, for negligent supervision of McCoy and Deputy Warden RedEagle at Eddie Warrior.

59. Also, because the Defendant Board and Defendant Allbaugh have a bond and insurance for general liability for their acts of negligence, payment of any damages under the OGTCA would not come from the state of Oklahoma, and

therefore would not be a prohibited state expenditure in violation of the Eleventh Amendment immunity provisions.   See concurring opinion of Justice Edmondson in *Barrios v. Haskell County*, 2018 OK 90 at ¶¶ 3, 4 (if funds do not come from state coffers, issue is moot – also stating that Section 1983 damages do not trigger 11th Amendment immunity situation)

60. Defendant McCoy is proximately responsible for negligent supervision of Defendant Deputy RedEagle, as McCoy was his Warden, and supervisor.

**VII.     BECAUSE EXHIBIT 9 IS AN ADMISSION BY THE DEFENDANTS THAT REDEAGLE WAS NOT IN THE SCOPE OF HIS EMPLOYMENT, DEFENDANTS, EACH OF THEM, ARE PROXIMATELY RESPONSIBLE FOR BOSH CLAIMS UNDER ARTICLE 2 SECTION 30 OF THE STATE CONSTITUTION, FOR VIOLATION OF HER PERSON**

61. All Defendants are proximately separately liable for "Bosh" causes of action, for violations of state constitutional rights of Plaintiff, as well as negligence within the scope of employment. *Bosh v. Cherokee Co*., 2013 OK 9. Under Article 2 Section 30 of the Oklahoma Constitution, Plaintiff is entitled to a private cause of action for excessive force under *Bosh*, *supra,* ¶¶ 32-33.   Please take notice of the gargantuan physique and strength of Defendant RedEagle.

62. The Oklahoma Consitution prohibits sexual assaults of inmates;

63. Under the Constitution the Eddie Warrior Correctional Facility has respondeat superior responsibility for its employees. *See Bosh supra.,*

64. Scope of employment is for a jury to determine in Oklahoma, so the issue of

employer ODOC's liability under the legal theories proposed,[3] including respondeat superior survives dismissal. *Nail v. Henrietta*, 1996 OK 12.

65. Plaintiff wrote a letter on March 11, 2020, offering to explain to Defendant ODOC how Defendant RedEagle was able to violate her person, so that ODOC could craft policies and procedures to protect other female inmates. (Exhibit 8)

66. All Defendants (except RedEagle) turned a blind eye to Plaintiff's offer to craft policies to protect women and explain how RedEagle accomplished his outrageous actions to violate her. (Exhibit 9)

VIII, DECLARATORY RELIEF – DEFENDANT DOC AND BOARD

67. Defendant DOC and Board are subject to declaratory relief, that they are proximately responsible for medical care of inmates, when they cause harm to inmates such as Plaintiff.

68. Also, Defendants are subject to declaratory judgment relief to determine whether as a matter of law, the bonds and insurance policies they have taken out, which are above and beyond the OGTCA statutory limit, subject them to damages up to the amount of such bonds/policies, and that 11th Amendment immunity would not be triggered if such insurance funds paid for any damages.

69. Recently, the Oklahoma Supreme Court issued a ruling upholding a

---

[3] Except for 42 USC 1983 – which has been construed by this Court and others as generally unable to create respondeat uperior liability. It should be noted that in unique circumstances, federal courts have awarded punitive damages against a public employer if its employee acts are egregious, per 42 USC 1983.

declaratory judgment cause of action against the Defendand Department of Corrections.

## IX.      INJUNCTION – AS TO ALL DEFENDANTS

70. The OGTCA does not touch on equitable relief. Because Defendant RedEagle caused statutory rape / sexual assault of Plaintiff, and because the Defendants Board and other individual defendants are specifically identified as being personally responsible for enforcing the administrative law adopted by the DOC (Policies attached), the Defendants are fully subject to prospective injunctive relief to enforce policies and not violate them.

## X.      FEDERAL CIVIL RIGHTS

71. Defendants are proximately responsible per 42 USC 1983 for violations of Plaintiff's rights guaranteed under the Fourteenth Amendment, for deliberate indifference, and for establishing a custom and practice of indifference toward protecting females such as Plaintiff, espousing a course of action failing to create protocols and failing to enforce existing protocols, for the safety of Plaintiff. Defendants' course of conduct and pattern is likely to result in further constitutional violations of other female inmates.

## COMPLIANCE WITH OGTCA NOTICE PROVISIONS

72. By letter dated March 26, 2020, from the Risk Management Department of the Oklahoma Office of Management and Enterprise Services, the timely filed notice of tort claim by L.G. was denied. (Exhibit 9)

73. In that March 26, 2020 letter (Exhibit 9) was the clear rejection of L.G.'s

offer to meet with Defendants and explain the failures in policy enforcement and the lack of existing protocols that could have protected her and that could protect other females. This case is timely filed within 180 days of that letter.

74. Under information and belief, ODOC, its Board, and/or Director Allbaugh, have taken out policies of insurance, securing policies with limits above and beyond the Oklahoma Governmental Tort Claims Act limits of liability. Under the OGTCA, the State is excuded from liability for the "[p]rovision, equipping, operation or maintenance of any prison." 51 OS 155(25), However, Plaintiff would submit that ***this case arises from the individual Defendants failijng to act in the administratively designed, structured, operation*** of the Eddie Warrior facility, ***by specifically failing to enforce, administer, and comply with, the policies described herein.***

## CONCLUSION AND REQUEST FOR RELIEF

75. Recently, the Oklahoma Supreme Court ruled against ODOC, in a case where Defendant Allbaugh was sued in his official capacity, proving ODOC may be sued in state or federal court. *See Bd of County Commissioners v. Oklahoma Dept of Corrections, Joe Allbaugh in his official capacity as Director, and Board of Corrections* (Okla. Co. Case CV-2017-684), available on OSCN.net.

76. That case, in the immediately preceding paragraph, involved a declaratory judgment action against ODOC claiming it owed money to Plaintiffs. The Oklahoma Supreme Court ruled that ODOC did in fact owe such funds.

**77.** Plaintiff similarly request declaratory judgment that any Defendant who has taken out an insurance policy or bond, is therefore subject to jury determination of liability up to the amount of that policy per Oklahoma law. *See e.g.* 57 OS 504(5). It is expected such information would be captured through discovery.

**78.** Plaintiff also seeks injunction at the beginning of this case, prohibiting the Defendants from erasing any recordings or documents regarding this matter.

**79.** Jurisdictional discovery is necessary to prove the viability of Plaintiff's claims under 42 USC 1983, for injunction sought, and for declaratory judgment relief.

**80.** Plaintiff seeks preliminary injunctive relief in this case, and a protective order in order to receive and review <u>one administrative regulation that Defendant ODOC refuses to make available to the public (OP-040101)</u> and to determine if other individuals are identified in such policy as personally responsible for enforcement and compliance of any other administrative protocols that would have prevented the violation of L.G. to occur at the Eddie Warrior facility.

**81.** These Defendants have failed to act on their responsibilities, and proximately deprived Plaintiff of rights protected under the U.S. Constitution, including but not limited to: violation of Plaintiff's person, under 42 USC Section 1983.

**82.** Defendants have caused and/or directed and/or negligently allowed

administrative employees under their control to violate Plaintiff's state rights and fail to adhere to administrative protocols, causing violation of Plaintiffs' constitutionally protected rights. Defendants' actions individually and in concert did deprive Plaintiff of her rights, causing substantial damages, and giving rise to a cause of action in equity – permanent injunction.

83. Plaintiff seeks a permanent negative injunction against ODOC, the Defendant Board of Corrections, and the Defendants identified as personally responsible for abovementioned policies: requiring Defendants to adhere to, enforce, draft, improve, and comply with administrative policies and procedures, existing currently to protect female inmates, and to craft policies that should exist, that would have prevented L.G. from being violated at the Eddie Warrior facility, in Muskogee, Oklahoma.

84. The conduct of these defendants deprived the Plaintiff, L.G., of the protection of her rights, privileges and immunities secred to her by the Consittution of the United States.   These  defendants and each of them caused the injuries and damages to the Plaintiff by:

   a. Deliberate indifference to the needs and protections of assault for physical wellbeing of the Plaintiff while incarcerated in the Eddie Warrior Prison facility.

   b.        Deliberate indifference to the need for appropriate protection against the sexual assault present in the jail, and therefore likely future

constitutional violations of other female inmates other than Plaintiff (Exhibits 8, 9);

c.      Failing to provide sufficient trained personnel to recognize the seriousness of the assault and recognize what needs to be done to abor and stop injuries to prisoners from sexual assault.

d.      Failing to adopt, incorporate and enforce such rules, regulations, policies and procedures through operations and management of the Eddie Warrior Correctional  Facility as would have reasonably protected and provided L.G. with the necessary safety and protecdtion of her life and body from sexual assault and injury.

e.      That the acts and failures to provide necessary care, safety and protection by the Defendant, and each of them, was in violation of the Federal Constitution, Federal and State laws.

85. As a direct and proximate result of the actions and inactions of these defendants, and each of them, acting under color of state law L.G. was sexually assaulted and was deprived of her civil rights under the Constitution of the United States, more specifically the 4th, 8th and 14th Amendments and other laws of the United States, common law and statutory law including the Civil Rights Act and 42 U.S.C. §1983 and §1988 and Article 2 Section 30 of the Oklahoma State Constitution.

## JURY TRIAL REQUESTED

All of the above stated claims and causes of action arise from and form part

of the same case and controversy and Plaintiff is entitled to and hereby requests a jury trial as to each and every cause of action or claim asserted herein.

## PRAYER FOR RELIEF

Plaintiff prays for judgment as follows:

A. Actual damages in excess of seventy-five thousand dollars ($75,000.00);

B. Compensatory damages, including, but not limited to emotional distress, mental anguish; future medical and psychological damages; pain and suffering; Punitive or exemplary damages.

C. Declaratory relief regarding the monetary liability of Defendants who have insurance policies or bonds with limits above and beyond the OGTCA limit;

D. Immediate and prospective injunctive relief as appropriate (to avoid spoliation of evidence and requiring Defendants to act according to administrative law);

F. Attorney fees, costs and such relief as the Court deems reasonable and proper.

Respectfully submitted,

/s/E W KELLER
E.W. Keller, OBA 4918
Henry Dalton, OBA# 15749
KELLER, KELLER & DALTON, PC
201 Robert S. Kerr, Suite 1001
Oklahoma City, OK 73102
Tel. 405.235.6693
Fax. 405.232.3301
Email: kkd.law@coxinet.net

ATTORNEYS FOR PLAINTIFF L.G.

ATTORNEY LIEN CLAIMED

**CERTIFICATE OF SERVICE**

This is to certify that on this 24th day of November, 2020, a true and correct copy of the above and foregoing Amended Complaint was electronically transmitted to the Clerk of the Court using the ECF System for filing and transmittal and notice of electronic filing to the following ECF registrants:

Kari Y. Hawkins
Assistant Attorney General
313 NE 21st Street
Oklahoma City, OK  73105

Anthonyt  L. Allen
106 S. Okmulgee Avenue
Okmulgee, OK  74447

<u>/s/  E W Keller</u>