# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)LAURIE GARLAND, an individual<br>          Plaintiff,<br><br>v.<br><br>(1) STATE OF OKLAHOMA EX REL<br>OKLAHOMA DEPT OF CORRECTIONS,<br>(2) CHRISTOPHER REDEAGLE, individuall<br>(3) SHARON MCCOY, individually<br>(4) JOE ALLBAUGH, Individually<br>(5) PENNY LEWIS, Individually<br>(6) RABEKAH MOONEYHAM, individually<br>(7) HEATHER CARLSON, individually<br>(8) BOARD OF CORRECTIONS<br>          Defendants | Case *No. CIV 2020-306-RAW*<br><br>*Before the Honorable Ron White* |

**PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT MOTION
OF DEFENDANTS SHARON MCCOY, PENNY LEWIS
AND RABEKKA MOONEYHAM (DOC 65)**

**E. W. KELLER  OBA #4918
HENRY DALTON OBA #15749
KELLER, KELLER & DALTON PC
201 ROBERT S. KERR, SUITE 1001
OKLAHOMA CITY, OK  73102
405-235-6693
E-MAIL  - kkd.law@coxinet.net**

**SEPTEMBER 27, 2021**

## TABLE OF CONTENTS

PAGE

INTRODUCTION                                                                    1

RESPONSE TO UNDISPUTED MATERIAL FACTS                                           1

CONCISE STATEMENT OF ADDITIONAL FACTS                                           7

PROPOSITION ONE
        ADMINISTRATIVE REMEDIES                                                14

        STATE INSURANCE POLICY ISSUED BY AIG FOR DOC EMPLOYEES
        PER 51 O.S. §158(C) CONTROLS REGARDING PLAINTIFF'S
        ADMINISTRATIVE REMEDIES                                                15

        PLAINTIFF'S CONSISTENT CLAIMS OF EMPLOYMENT HARRASSMENT
        TRIGGERS AIG'S EPL POLICY AND ALL ADMINISTRATIVE REMEDIES
        FOR PLAINTIFF ARE CONTRACTUALLY OUTSOURCED TO AIG FOR
        RESOLUTION                                                             15

        THE STATE OF OKLAHOMA CANNOT ABORGATE PLAINTIFF'S CIVIL
        RIGHTS CLAIMS                                                          16

        CONSTITUTIONAL PROTECTIONS MAY NOT BE TAKEN AWAY BY
        LEGISLATION                                                           17

        WAIVER                                                                17

PROPOSITION TWO

        SEXUAL ABUSE OF PRISONERS VIOLATES THE 8TH AMENDMENT                   18

PROPOSITION THREE

        SEXUAL ABUSE OF PRISONERS VIOLATES THE 14TH AMENDMENT                  20

PROPOSITION FOUR

        POLICY VIOLATIONS                                                     21

**PROPOSITION FIVE**

    **SEXUAL ABUSE OF PRISONERS VIOLATES THE 4TH AMENDMENT**        **22**

**PROPOSITION SIX**

    **WORKPLACE OPERATIONAL MANUAL POLICY SHOWS DEFENDANT
WARDEN MCCOY WAS DIRECTLY AND PROXIMATELY RESPONSIBLE
FOR OVERSIGHT OF EMPLOYMENT MATTERS, SUCH AS PROPER
INMATE COUNTS**        **22**

    **PERSONAL PARTICIPATION IN CONSTITUTIONAL VIOLATIONS**        **23**

**PROPOSITION SEVEN**

    **THERE IS NO QUALIFIED IMMUNITY FOR SEXUAL ASSAULT**        **24**

**CONCLUSION**        **25**

**CERTIFICATE OF SERVICE**        **26**

## TABLE OF AUTHORITIES

### STATUTES

**51 O.S. §158(C)**                                                                                  15

### CASES

**Arnold v. Maynard**,
    942 F.2d 761 (10th Cir. 1991);                                          16
**Ashcroft v. Iqbal**
    556 U.S. 662, 676, 129  S. Ct. 193 (2009)                             19
**Burnett v. Grattan**,
    468 U.S. 42 (1984)                                                          16
**Childers v. Independent School District No. 1 of Bryan County,**
**State of Oklahoma**,
    676 F.2d 1338 (10th Cir. 1984);                                         16
**Christiansen v. City of Tulsa**
    332 F.3d 1270, 1280.  (10th Cir. 2003)                              20
**Christopher v. Harbury**
    536 U.S. 403, 122 S.Ct. 2179, 2187, n. 12, 153 L.Ed 2d 413 (2002)     17
**D.L. v. Unified School Distr. No. 497**
    270 F. Supp.2d 1271 (D. Kan. 2002)                                   17
**Estate of Crowell v. Board of County Comms. of County of Cleveland**
    2010 OK 5, 237 P.3d 134.                                                 25
**Gibson v. Berryhill**
    41 U.S. 564                                                                 17
**Graham v. Connor**
    490 U.S. at 395, 109 S.Ct. 1865 (1989)                               22
**Houghton v. Shafter**
    392 U.S. 639.                                                               17
**Hovater v. Robinson**
    1 F.3d 1063, 1068 (10th Cir. 1993).                                   18
**Jones v. Hunt**,
    410 F.3d 1221, 1225–26 (10th Cir.2005)                               22
**Keith v. Koerner**
    (10th Cir. 15-3219), ruling issued December 9, 2016)               16
**Leyra v. Denno**
    347 U.S. 556, 558, 74 S.Ct. 716, 98 L.Ed. 948 (1954)                20
**Martinez v. Carson**

697 F.3d 1252, 1255 (10th Cir. 2012)                    19

*__Michigan v. Chesternut__*
486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)     22

*__Occidental Life Ins. Co. v. EEOC__*
432 U.S. 355, 367 (1977).                                16

*__Robbins v. Oklahoma__*
519 F.3d 1242, 1251 (10th Cir. 2008)                   20

*__Rogers v. City of Little Rock, Ark__*,
152 F.3d 790, 797 (8th Cir. 1998)                      20

*__Smith v. Cochran__*
339 F.3d 1205 (10th Cir. 2003)                         18

**OTHER AUTHORITIES**

FRIENDLY, FEDERAL JURISDICTION: A GENERAL Vmw 75-107 (1973);
see also Aldisert, Judicial Expansion of Federal Jurisdiction:  A
Federal Judge's Thoughts on Section 1983, Comity and the Federal
Caseload, 1973 Law & Soc. 0. 557 )1973                    17

## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1)LAURIE GARLAND, an individual<br>            Plaintiff,<br>v.<br><br>(1) STATE OF OKLAHOMA EX REL<br>OKLAHOMA DEPT OF CORRECTIONS,<br>(2) CHRISTOPHER REDEAGLE, individuall<br>(3) SHARON MCCOY, individually<br>(4) JOE ALLBAUGH, Individually<br>(5) PENNY LEWIS, Individually<br>(6) RABEKAH MOONEYHAM, individually<br>(7) HEATHER CARLSON, individually<br>(8) BOARD OF CORRECTIONS<br>            Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case *No. CIV 2020-306-RAW*

*Before the Honorable Ron White*

### PLAINTIFF'S RESPONSE TO SUMMARY JUDGMENT MOTION
### OF DEFENDANTS SHARON MCCOY, PENNY LEWIS
### AND RABEKKA MOONEYHAM (DOC 65)

### INTRODUCTION

COMES NOW Plaintiff, Laurie Garland, by and through her attorney, E. W. Keller asking this Court to deny Defendants' McCoy, Lewis and Mooneyham's Motion to for Summary Judgment (Doc. 65) and to allow Plaintiff to supplement her Response to the Summary Judgment after Defendant McCoy's deposition which is scheduled for October 19, 2021.

Plaintiff has not responded to the Claims of Defendant, Mooneyham as Plaintiff will be dismissing said Defendant.

### RESPONSE TO UNDISPUTED MATERIAL FACTS

1 -6    Paragraphs 1 -6 are admitted;

7.      Both parties wrote letters – Beginning in early 2019 Deputy Warden Redeagle admits to sending numerous notes and cards to inmate Garland.  (Exhibit 7, 11)  Even after inmate Estes complaint, Defendant

1

Redeagle continued to send personal love letters and notes to inmate Garland.  (Knight Depo. p. 106).  This correspondence violates the PREA.  (Knight Depo. p. 47)

8.      Admit

9.      Unknown

10.    Letter  - Beginning in Early 2019 Deputy Warden Redeagle admits to sending numerous notes and cards to inmate Garland.  (Exhibit 7, 11)  Even after inmate Estes complaint, Defendant Redeagle continued to send letters and notes to inmate Garland.  (Knight Depo. p. 106).  This correspondence violates the PREA.  (Knight Depo. p. 47)

11.    Denied.   Chief of Security Cox only was to do what Warden McCoy instructed.  i.e.  obtain a statement.   He did not and was not instructed to investigate or collect evidence.  (Cox Depo. pp 28- 29)  Warden McCoy never authorized Cox to do an inquiry into the matter.   (Cox Depo.  pp 44-45)  Warden McCoy waited five days before instructing COS Cox to obtain a statement.  (Cox Depo. pp 44-45)

12.    Admit – COS Cox says these statements should have led to greater scrutiny of inmate Garland and a close watch on her incoming mail.  (Cox Depo. p. 57)   Prior on March 7, 2014 Deputy Warden Redeagle had directed staff to log into the inmate phone system so he, Redeagle, could listen to phone calls of Garland.  (Exh. 6)  Despite this knowledge Warden McCoy did not authorize an investigation or have COS Cox look into matters.  (Cox Depo. p. 64)

13.    March 13, 20219, Ms. Estes reiterated her prior beliefs and further stated she thought Deputy Warden Redeagle should be held accountable for inappropriate interactions with Garland and providing her with panties.  (Exh. 5)   Estes thought Deputy Warden Redeagle should

be held accountable.   This again was provided to Warden McCoy for a second time on March 8, 2019.

14.    Letter - Beginning in early 2019 Deputy Warden Redeagle admits to sending numerous notes and cards to inmate Garland.  (Exhibit 7, 11) Even after inmate Estes complaint, Defendant Redeagle continued to send letters and notes to inmate Garland.  (Knight Depo. p. 106).  This correspondence violates the PREA.  (Knight Depo. p. 47)

15.    Admit in part, denied in part.  Chief of Security Cox never offered protection nor took any steps to insure  Garland's safety or to remove her from proximity or control of Deputy Warden Redeagle.  (Cox Depo. pp 83, 86, 87, 94, and 95)  No person at Eddie Warrior Corrections Center took any steps to protect Plaintiff from retaliation.   Garland's March 18, 2019 statement makes reference that she and Deputy Warden Redeagle had been interacting since November, 2018 and that inmate Woosley thought Defendant Redeagle was spending too much time with inmate Garland.  (Exhibit 8).

16.    Admit document.  Denied in that Plaintiff was called in and told what to write by Chief of Security Cox and a lady.   (Garland Depo. pp 71-72 and 265-266)  Multiple people had brought to EWCC staffs attention that Deputy Warden Redeagle was being overly friendly with Plaintiff and Chief of Security wanted her to write a note so no one got in trouble.  (Garland Depo. pp 71-76)  COS Cox never offered protection nor took any steps insuring her safety or to remove her from control by Defendant Redeagle.  (Cox Depo. pp 83, 86, 87, 94, and 95)  No person at Eddie Warrior took any steps to protect Plaintiff or remove her from the sexual misconduct of Deputy Warden Redegle.

17.    Admit.  Deny in that Warden McCoy made no real effort to

3

investigate or separate Deputy Warden Redeagle from Garland.   At the time Deputy Warden Redeagle had the sought items in his safe, Panties, Photos and letters of Garland.   (Exh. 1 – Official Oklahoma Dept. of Corrections Investigative Report)

18.   Such items where contained in Defendant Redeagle's safe which McCoy did not have searched.   ((Exh. 1)

19.   Admit document – Denied in that the statement was patently false in that Garland reported she had been approached by inmate Woolsey who said Redeagle and Garland were spending too much time in each other's company.   Inmate Garland was told what to write.  Her  release date could have been made longer if found had been engaged in a sexual episode.  (Cox Depo. pp. 97, 36, 68, 69, Knight Depo. p. 85, 106, 20).

Denied.    Even though Natalie Cooper had arrived Warden McCoy was still in charge at EWCC.  (Knight Depo.  p. 108)  Warden McCoy was involved and present with investigator Knight on April 3, 2019 at Eddie Warrior Correctional Center for the search and interview of Redeagle.   (Knight Depo. p 26, 60-61) (Exh. 1)   Defendant's personal report was not signed by the appointing authority until April 9, 2019.  (Def. Exhibit 9)

21    Admit.  Further DOC and Warden McCoy were aware Woolsey had information regarding an inappropriate relationship on March 19, 2019 when Plaintiff Garland brought Woolsey's name out in her written report (Exh. 8).

22.   On this date while conducting the shake downs inmate Woolsey told searching Sgt. Anderson, "the box you can find in the deputy's office and the black underwear that she wore and gave to him are at his house . . ." (Exh. 10)  Warden McCoy took no action to follow up on this information.

23.    Admit based upon Estes statements, Interim Eddie Warrior Correctional Center Warden Cooper determined the matter should be turned over to the Office of Fugitive Apprehension and Investigations.

24.    Admit 4-3-19 inmate Crystal Covalt filed a statement that almost every Monday-Friday Redeagle was waiting for Orderly Garland, that he had provided Garland underwear. (Exh. 11)

25.    Admit in part. Denied in that Garland stated Redeagle and her, kissed and touched each other on buttock and genital area which is defined as abusive sexual contact in the DOC Misconduct Report. (Exh. 1, Bates 5970-5973, Exh. 11)

26.    Admit to written statement. Denied in that there was a physical and emotional relationship fostered by Defendant Redeagle. (Garland Depo. 81-81, 85-87, 99-100, 107, 111, 166)

27.    Admit;

28.    Denied Plaintiff only had an informal talk with Whitney Lewis and PREA was not brought up. (Garland Depo. p 144) Denied in that Garland had submitted her statement dated 4-3-19 that Defendant Redeagle had kissed and groped her.

29.    Admit  Document

30.    Admit  Document

31.    Denied – The new arrival intake indicates prior sexual victimization. Plaintiff was not asked about sexual victimization at EWCC. (Garland Depo. p. 138) Denied in that Plaintiff Garland had submitted a statement on 4-3-19 that Deputy Warden Redeagle had kissed and physically touched her. (Ex 11)

32.    Denied – Sexual actions between staff and inmates can never be deemed consensual. (Knight depo. p. 54) Due to  unequal power

structure, consent cannot be given by inmates.  (Knight Depo. p. 66)
There can be no consent sexually between a Deputy Warden and an
inmate.  (Knight Depo. pp 54, 66 and 79)  Warden McCoy was still active
at EWCC and was present at all times  4-3-19 with Investigator Knight
(Knight depo. 26, 60-61)  Warden McCoy should have taken Estes
allegations seriously and reported to the Inspector Generals Office.
(Knight Depo. pp. 60-70)

33.     Denied – The incident was previously verified by inmate Estes in
March, 2019 and Warden McCoy neglected to treat the report seriously
and report to the office of Fugitive Apprehension and Investigations in
violation of OP-030601.   Oklahoma Department of Corrections
Investigation Report  (Exh. 1 )   Deny that Defendant McCoy was not
involved on 4-3-19.  (Knight Depo. 26, 60-61)

34.     Letters - Beginning in early 2019 Deputy Warden Redeagle admits to
sending numerous notes and cards to inmate Garland.  (Exhibit 7, 11)
Even after inmate Estes complaint, Defendant Redeagle continued to
send personal love letters and notes to inmate Garland.  (Knight Depo. p.
106). This correspondence violates the PREA.  (Knight Depo. p. 47)

35.     Admit.

36.     Denied.  Warden McCoy at EWCC determined the extent of any
PREA Investigation or inquiries  (Cox Depo. pp 28-29).   Warden McCoy
determined how quickly and to what extent to respond to Estes
complaint.  (Cox Depo. pp. 44-45) Admit Deputy Warden was the one
PREA complaints would go to.   (Redeagle – Garland  p. 287)

37.     Denied.   Defendant Lewis is the Chief Administrator of Auditing and
Compliance.   She is in charge of compliance and auditing of operations
and how EWCC is run.   (Lewis Depo. pp. 7, 26)  Safety and the physical

structures of the EWCC are part of her job purview. (Lewis depo. pp 17, 26)

38.    Cox testified better video monitoring and more staff could prevent sexual abuse. (Cox Depo.  p. 25, 31)    Better training and staff could prevent sexual misconduct.  (Knight Depo. p. 76)  Defendant Lewis' job includes central and prevention contraband.  (Lewis depo. p. 20). Redeagle manipulating use of physical structures and buildings .  At the EWCC areas and inmates were not being inspected sufficiently.  (Lewis Depo. pp 26-27)

## CONCISE STATEMENT OF ADDITIONAL FACTS

1. Plaintiff worked in Administrative Staff Building #8 beginning September 28, 2018.   Defendant Redeagle introduced himself to Plaintiff then began to show up daily and wait on her so he could visit and talk with her. (Garland Depo pp 20-23) This talk escalated to be uncomfortable when Deputy Warden Redeagle started stating he wanted to kiss Plaintiff.  (Garland Depo. p. 26)

2. Defendant Redeagle would tell inmate Garland to look in certain places where he had placed notes to her.  (Garland Depo.  p. 24)

3. Plaintiff wrote notes and would hand them to Redeagle.  She did not intend to have a romantic or sexual relationship.   (Garland Depo. p. 39) Defendant RedEagle's hanging around waiting for Plaintiff at her work assignment lead to making her co-workers feel uncomfortable.   (Garland Depo. p. 61) It is violation of policy and inappropriate for staff to intentionally go to an area to visit with inmates. (Knight p 49, 50, 52)

4. Defendant Redeagle began paging inmate Garland or having EWCC staff bring her to his office.  (Garland Depo. pp 80, 84)

5. Redeagle called Plaintiff to his office then directed her to go to the property room where he kissed her and put his hands down the back of

her pants.  (Garland Depo. pp 78-79)  (Exh. 11)

6.  A few days later he directs Plaintiff to again meet him at the property room and she wanted things to stop.   He kissed her, put his fingers on her genitals and placed her hand on his genitals (Garland Depo.  pp. 81-82, 111, 166)  (Exh. 11)

7.  Redeagle continued to call Plaintiff into his office.  (Garland Depo. p. 84)

8.  While cleaning a bathroom Redeagle entered and gave Plaintiff a pair of lacey underwear to wear.   (Garland Depo. p. 103)  Shortly thereafter he gave her two more pairs of underwear for her to wear. (Garland Depo. p. 85-87)  (Exh. 11)   Garland returned the worn underwear to Defendant Redeagle who kept them in his residence.   (Oklahoma Dept. of Corrections Investigative Report)  (Exh. 1)

9.  Around March 27, 2019, after inmate Estes alert of an inappropriate relationship, Deputy Warden Redeagle once again sexually abused inmate Garland.  (Garland Depo. pp. 99-100)  She tried to end things but he put his hand down her pants. (Garland Depo. pp. 100-102) This March 27, 2019 conduct occurred after inmate Estes' incident report on March 13, 2019.  (Exh. 5)

10. Inmate Estes complained to EWCC staff March 13, 2019 and an incident report was made that same day.  (Exh. 5 - Bates #5865)   An incident /staff report was filed on March 13, 2019 regarding inmate Estes' complaints that Plaintiff and Redeagle were spending excessive time together and that he had given her underwear to wear.  (Exh.  5)

11. Warden McCoy's purposely avoiding looking into and ignoring the ongoing sexual misconduct of her deputy warden does not relieve her of her duty to protect inmates.   Warden McCoy is unable to

agree that Plaintiff Garland should have been protected from sexual advances or assault by Defendant Redeagle. (McCoy Req. for Admission #5, Exh. 17) It should be common knowledge to all staff that prisoners should be free from sexual misconduct. (Cox depo p. 90, Knight Depo, p. 101) Warden McCoy disclaims any personal or independent knowledge of what occurred. (McCoy Req. for Admission #2 – Exh. 17) This despite being present with investigator Knight interviews with Defendant Redeagle and the search of his house. (Knight Depo. pp. 26, 60-61) and reviewing notes from the Chief of Security (Cox Depo. p. 47) and interview of Deputy Warden Redeagle.

12. Oklahoma DOC had correctional facilities with one of the highest instances of PREA violations in the country. (Knight Depo. p 74) Sexual assault and harassment is a continual problem the DOC. (Knight Depo. p. 111. Cox Depo. p. 26)

13. Upon being told the Deputy Warden was having an inappropriate relationship with an inmate Warden McCoy:

    A.    Waited 5 days to refer it to Chief of Security Cox. (Cox Depo. p. 44), (Exh. 5)

    B.    Did not authorize Chief of Security Cox to perform an investigation – but limited him to only take a statement. (Cox Depo, pp., 28- 29, 44-45)

    C.    Did nothing to separate Garland from Redeagle or reassure inmate Garland from retaliation in violation of policy. (Knight Depo p 85) To the contrary, no assurance of safety and protection were made to inmate Garland. (Cox Depo, pp. 83- 86, 94)

    D.    Failed to Report events to the office of Fugitive

9

Apprehension and Investigations for investigation as
required by OP -030601.  (Knight Depo.  pp 62-63, 69-70, 87)
Warden McCoy told Investigator Knight she forgot to report
it.  (Knight Depo p. 104)   (Ex. 1 Oklahoma Department of
Corrections Investigative Report Bates #5838)

E.    The events were occurring November, 2018 through
March, 2019 while Defendant McCoy was warden.  Inmates
and staff were aware of the relationship.  McCoy should
have been aware, investigated and report the conduct.

F.    Even after inmate Estes alerting EWCC staff Deputy
Warden Redeagle continued to write letter engage in an
inappropriate relationship and  physically assault Plaintiff.

14. Investigator Knight investigated this matter on April 3, 2019.  He
did not notify Redeagle of the investigation as he did not want Redeagle
leaving or interacting with inmate Garland.  (Knight Depo. pp 16. 21)

15. With Warden McCoy present, Deputy Warden Redeagle
initially lied, then admitted to an inappropriate relationship with inmate
Garland and having inmate Garland's used panties that he would sniff.
(Knight Depo. p. 25-28, 60-61,  Oklahoma Department of Corrections
Investigative Report.  Exh. 1)

16. Investigator Knight then interviewed inmate Garland and
gave her assurances of safety or protection from EWCC staff.  (Knight
Depo. p. 93)  Garland was a credible witness.   (Knight depo. p. 89)
Investigator Knight's findings are summarized:

A.    Deputy Warden Redeagle continued sexual battery on inmate
Garland in violation of OP-110215.  (Exh. 1)  ODOC Investigative
Report  Bates #5834-5836

B.    Deputy Warden Redeagle violated OP-110215 in providing inmate Garland underwear and sending her letters and written messages.  (Exh. 1 - Bates#5836-5837)

C.    Deputy Warden Redeagle violated OP 040106 in having two firearms in his vehicle which were unsecured in his vehicle in the EWC parking lot.  (Exh. 1 - Bates #5837-5838)

D.    Warden McCoy failed to refer the investigation into Deputy Warden Redeagle and inmate Garland to the Office of Fugitive Apprehension and investigations for investigation as required by OP – 030601.  (Exh. 1 - Bates #5830)

E.    Opined that the photographs, correspondence, underwear, video all support Garland's claims.  (Knight Depo. p 96)

17. **Plaintiff's confinement Expert, Aubrey Land's**  report sets forth violations summarized below:

A.  Failure of Warden McCoy to report to the DOC Investigation Unit the information obtained on March 13th and 18th regarding the Deputy Warden providing underwear to inmate Garland and the Deputy Warden in a relationship with inmate Garland.   (Exh. 3. - p. 7)

B.  Warden McCoy should not have been allowed the Deputy Warden to have knowledge of the allegations prior  to a formal investigation being conducted.  (Exh. 3 - p. 7)

C.  The failures of Warden McCoy left inmate Garland unprotected and at the mercy of the Deputy Warden.  (Exh 3 - p. 7)

D.  Due to the power dynamics of imprisonment there con not be any true consent given by inmates towards prison staff.  (Exh. 3

11

pp. 8-9)

E. Failure to report compromises the safety of the Correctional
   Facility.  (Exh. 3- p. 10)

F. The failures to report indicates the EWCC was operating below
   critical staffing levels needed to maintain the safety of
   inmates. (Exh. 3)

G. Warden McCoy, Deputy Warden Redeagle, and Penny Lewis
   acted with deliberate indifference and reckless disregard for
   the safety of inmate Garland.  (Exh. 3)

H. Defendants' actions were clearly outside the training practices
   of the D.O.C. and Correctional facility standards.  (Exh. 3 )

I. "It is my professional opinion Warden Sharon McCoy did
   knowingly and willfully violate ODC policy by refusing or failing
   to report the PREA allegations against Deputy Warden Red
   Eagle.  Warden McCoy knew of the allegations as early as
   March 13, 2019 and did not report the violation until April 3,
   2019.   The failure to report resulted in the victim being subject
   to sexual and physical control of Deputy Warden RedEagle.
   Warden McCoy as the highest ranking staff member of the
   facility clearly understood her failure to report posed a real
   threat to the safety of the victim as well as the safety of the
   inmate who reported the PREA incident."  (Exh. 3 - p. 12)

J. "I further opine Deputy Warden RedEagle did knowingly and
   intentionally sexually assault inmate Laurie Garland, an inmate
   under his direct supervision, care, custody and control in
   violation of the laws of the State of Oklahoma and the United
   States Federal Code in addition to the policies of the ODC.

"(Exh. 3- p. 12)

K. "I further opine the ODC to include the Director of ODC, Administrators, Joe Allbaugh, Penny Lewis, Rabekah Mooneyham, Heather Carlson, and the Board of Correction Members were all made aware of this violation of Warden McCoy and failed to take disciplinary actions.   The lack of such action by the above mentioned strongly suggest they condone such violations as their duties were to ensure compliance with policy." (Exh. 3 - p. 13)

L. Defendants' failed to immediately transfer inmate Garland to another facility and/or place her in a protective setting. (Exh. 3 - p. 13)

M. There should have been a debriefing of the incident. (Exh. 3)

18. **Plaintiff's expert clinical psychologist, William Schmid** has opined that at the EWCC, the Deputy Warden relationship with inmate Garland was based upon a "markedly uneven distribution of individual power and personal/sexual exploitation." (Exh. 4)

19. As a result Ms. Garland developed "significant psychological symptoms related to Post Traumatic Stress Disorder."  (Exh. 4)

20. Clinical psychologist Schmid further opined psychological structures explain Ms. Garland's participation and cooperation in interacting with Deputy Warden Redeagle.  Ms. Garland exhibited characteristics of:

> **"Identification with the aggressor:**  In this construct, the weaker person in the relationship, victim, prisoner, child, identifies with the more powerful aggressor, such as a guard, overseer, or parent.  Some theorist discuss the identification as a survival defense in order to draw favor for the more powerful and perhaps

13

dangerous person.

**Stockholm syndrome:**   The syndrome tends to have a more mutual aspect, the identification with the more powerful person can be more mutual and can lead to defending and protecting the more powerful person.   There may also be reciprocation by the more powerful person or persons.

**Trauma Coercive Bond:**   This type of bonding is sometimes with an individual or a group.   The bonding often comes about after a recurring pattern of abuse perpetuated by intermittent positive reinforcement.   The process is referred to as traumatic bonding. This type of bonding can be one sided, but is also referred to in abusive relationships." (Exh. 4)

21. Redeagle resigned 4-3-19   (Exh.12)

22. As a result of Investigator Knight's actions Plaintiff Garland was transferred to Mable Bassett April 12, 2019.   (Garland Depo. p. 13,15)

23. Shortly afterward Warden McCoy was reassigned to Jess Dunn Correctional Center.  (Exh. 1)

## PROPOSITION ONE
## <u>ADMINISTRATIVE REMEDIES</u>

Inmate Garland complied with the inmate grevience process.   DOC Policy OP-090124(iv)  provides an offender must attempt to informalily resolve her complaint by speaking with an appropriate  staff member.   If unsuccessful then the inmate submits a request to the staff.

It is undisputed that Garland spoke to Randy Knight, Investigator for the Department of Corrections and outlined her complaints.   As a direct result of this Defendant Redeagle resigned that day, Defendant McCoy was transferered to another facility and Plaintiff was moved form the EWCC.  Investigator Knight was able to efficiently resolve inmate Garland's concerns and issues.   There was no need to file an RTS  as she had been

14

removed from the EWCC and was way from Defendant Redeatgle and Defendant McCoy.   There was no greivance process due to investigator Knight's actions.   The Muskogee District Attorney received recommendations to file charges against Defendant  Redeagle and Defendant McCoy.    Plaintiff  Garland is out of the correctional facility.

## STATE INSURANCE POLICY ISSUED BY AIG FOR DOC EMPLOYEES, PER 51 O.S. §158(C) CONTROLS REGARDING PLAINTIFF'S ADMINISTRATIVE REMEDIES

Under federal law, insurance is regulated at the state level. (Exh. 15 at pp. 5, 20)   (Tenth Circuit ruling that insurance company is necessary party, as it was contractually charged with administrative investigation and settlement of claims).  Oklahoma law *per* OGTCA defers to terms of insurance contracts for remedies. 51 O.S. §158(C). As the State took out DOC employment insurance, the terms of that policy control, and <u>Plaintiff's status is that of a beneficiary of the policy.</u> 51 O.S. §158(C); (Exh. 18)  (AIG policy mandating AIG, not DOC, is charged with administrative investigation and settlement of claims such as Plaintiff's case).

## PLAINTIFF'S CONSISTENT CLAIMS OF EMPLOYMENT HARASSMENT TRIGGERS AIG'S EPL POLICY, AND ALL ADMINISTRATIVE REMEDIES FOR PLAINTIFF ARE CONTRACTUALLY OUTSOURCED TO AIG FOR RESOLUTION

Plaintiff was employed at Eddie Warrior, and provided Defendants *per* discovery, her employment supervisors' names. Plaintiff fits the AIG insurance policy definition of "employee," and triggers coverage for administrative resolution of her grievance. (Exh. 18) (direct excerpt of AIG contract with DOC regarding employment acts). Plaintiff was harassed on a daily basis, culminating in several specific disturbing acts of sexual assault.   Her workplace harassment was separate, constant, and daily. It is this workplace harassment that Defendants Warden McCoy, and Lewis, as well as RedEagle, are responsible for, separate from his sexual assaults.   Her being forced to

15

wear underwear at work for him to later sniff, certainly is workplace harassment.   The daily trauma and harassment is clearly separate from the specific acts of sexual assault.

Defendant RedEagle was able to manipulate her ***work schedule***. *See e.g.,* Doc. 19 at: ¶¶18-19, at ¶33 (***personal work assigned by RedEagle***, grooming, and unusual events), at ¶34 (RedEagle called Plaintiff in for roll call when she was forced to be "***working***" for him – a violation of policy), ¶38 (Warden RedEagle manipulated key policy to storage area, and ***writing her love letters while at work***.

The Tenth Circuit has consistently ruled that a Defendant Warden's conduct in failing to mitigate the risk of sexual assault and harassment, proximately places the Warden at fault, and is an issue for a jury to decide, overcoming summary judgment.   See ***Keith v. Koerner*** (10th Cir. 15-3219), ruling issued December 9, 2016)

### THE STATE OF OKLAHOMA CANNOT
### ABORGATE PLAINTIFF'S CIVIL RIGHTS CLAIMS

It is well settled that a civil rights action brought under 42 U.S.C. §1983 is distinctly different from a tort action subject to state tort liability limitations and procedures.   The State cannot limit or require administrative exhaustion of Federal remedies.   See ***Childers v. Independent School District No. 1 of Bryan County, State of Oklahoma***, 676 F.2d 1338 (10th Cir. 1984); ***Arnold v. Maynard***, 942 F.2d 761 (10th Cir. 1991); ***Occidental Life Ins. Co. v. EEOC***, 432 U.S. 355, 367 (1977).   The Court in ***Burnett v. Grattan***, 468 U.S. 42 (1984) stated that it makes no sense to apply state law restrictions in civil rights cases against public officials.   Federal Law and Constitutional Protections trump state law.   Any administrative requirement formulated by the State do not bar Plaintiff's Constitutional

protections and right to enforce them.

Defendants' argument in Doc. 65 that administrative remedies under the PLRA, *inter alia*, were not exhausted, contradicts its exclusive remedies arguments regarding the OGTCA and qualified immunity.

Legal scholars and judges have recognized that Section 1983 claims are not intrinsically tied to state prison administrative remedies, and do not apply to injunctive relief.   H. FRIENDLY, FEDERAL JURISDICTION: A GENERAL Vmw 75-107 (1973);   see also Aldisert, Judicial Expansion of Federal Jurisdiction:  A Federal Judge's Thoughts on Section 1983, Comity and the Federal Caseload, 1973 Law & Soc. 0. 557 )1973.

## CONSTITUTIONAL PROTECTIONS MAY NOT BE TAKEN AWAY BY LEGISLATION

Plaintiff has alleged sexual assault as a prisoner at the Eddie Warrior Prison Facility.  She identified defendants' acts and omissions and relevant law.   Sexual assault of prisoner by jailers is clearly known/established law in addition to these constitutional rights there is a right of access to the courts as set forth in the Article IV privileges and immunities clause, of the First Amendment, Fifth Amendment due process clause, and the Fourteenth Amendment, equal protections and due processes clauses. ***D.L. v. Unified School Distr. No. 497***, 270 F. Supp.2d 1271 (D. Kan. 2002) ***Christopher v. Harbury***, 536 U.S. 403, 122 S.Ct. 2179, 2187, n. 12, 153 L.Ed 2d 413 (2002).  Generally, the Courts do not require exhaustion of remedies that are judicial in nature. ***Gibson v. Berryhill***, 41 U.S. 564, ***Houghton v. Shafter***, 392 U.S. 639.

## WAIVER

Defendants did not argue any aspect of administrative matters not being exhausted until this late state of litigation.   Under F.R.C.P. Rule 12(b), Defendants are to make such arguments in a responsive pleading (Motion to

Dismiss or Answer), or acquiesce to the Court's continuing jurisdiction.

## PROPOSITION TWO

## <u>SEXUAL ABUSE OF PRISONERS VIOLATES THE 8TH AMENDMENT</u>

The Tenth Circuit has made it clear sexial misconduct in prison is not tolerated.  "Sexual abuse is repugnant to contemporary standards . . ." **_Smith v. Cochran_**, 339 F.3d 1205 (10th Cir. 2003).  "[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." **_Hovater v. Robinson,_** 1 F.3d 1063, 1068 (10th Cir. 1993).  Under the Eight Amendment inmates have a constitutional right to be free from sexual abuse.  **_Id._**

There is a subjective and objective component both of which are met.  Plaintiff satisfies the Eighth Amendment threshold set forth in **_Smith v. Cochran_**, 339 F.3d 1205 (10th Cir. 1993):

> "Sexual abuse is repugnant to contemporary standards of decency and allegations of sexual abuse can satisfy the objective component of an Eighth Amendment excessive force claim.  We have expressly acknowledged that 'an inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards.  "Hovater v. Robinson, 1 F.3d 1063, 1068 (10th Cir. 1993).  The right to be secure in one's bodily integrity includes the right to be free from sexual abuse.  *See Barney v. Pulsipher*, 143 F.3de 1299, 1310 (10th Cir. 1998) (holding that 'plaintiffs' deprivations resulting from the sexual assaults are sufficiently serious to constitute a violation under the Eighth Amendment.') We find that Smith's allegation of sexual abuse by Cochran identifies acts that satisfy the objective prong of Smith's excessive force claim.  She states in her deposition testimony and in affidavit that Cochran forced her to expose herself to him and that he raped her on several occasions, including once with a salt shaker.

Smith's allegations also satisfy the subjective prong of an excessive force claim.  In cases of sexual abuse or rape.  'the conduct itself constitutes sufficient evidence that force was used 'maliciously and sadistically for the very purpose of causing harm.'  *Giron,* 191 F.3d at 190 (quoting *Whitley,* 475 U.S.  at 320-21m 106 S.Ct. 1078).  '[S]exual abuse of a prisoner by a corrections officer has no legitimate penological purpose, and is simply not part of the penalty that criminal offenders pay for their offenses against society.'  *Id.* (internal quotation marks omitted);  *Boddie v.Schnieder,*  105 F.3d 857, 861 (2d Cir. 1997) (finding the sexual abuse itself may be sufficient evidence of a culpable state of mind).  Because there can be no legitimate purpose for the sexual abuse and rape alleged by Smith, her allegations satisfy the requirement that she show Cochran acted maliciously and sadistically."

Defendants demonstrate complete deliberate indifference toward the fact that Plaintiff was sexually abused.  By denying responsibility for Deputy Warden RedEagle's sexual assault of Plaintiff, prove Defendants have turned a blind eye and demonstrated deliberate indifference toward prison guards and deputy wardens abusing inmates.

Supervising liablility for their own actions violate constitution. (Unconstitutional or wrongful policies)   Defendants reasonably should have known their conduction would lead to Plaintiff's deprivationj of Constitutional Rights  **_Martinez v. Carson_**, 697 F.3d 1252, 1255 (10th Cir. 2012)

Supervising liability under **_Ashcroft v. Iqbal_**, 556 U.S. 662, 676, 129  S. Ct. 193 (2009) exists:

"§1983 allows a plaintiff to impose liabliity upon a defendant-supervisor who creates, promulgates, or in some other way possesses responsibility for the continued operation of a policy the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff "to the deprivation of any rights . . . secured by the Constitution . . ." **_Dodds v. Richardson,_** 614 F.3d 1165, 1200 (10TH Cir. 2010)

19

Due to the power dynamic there can be no consent between a Deputy Warden and an inmate. The code of Federal Regulation codifies that sexual contact btwtween staff and an inmate is sexual abuse with or without consent. FR 115.6 This also has been testified to by Investigator Knight, Psychologist Schmid, Chief of Security Cox and Expert Land.

## PROPOSITION THREE
## SEXUAL ABUSE OF PRISONERS VIOLATES THE 14TH AMENDMENT

The 14th Amendment provides pretrail detainess right to be free from sexual assualt by prison staff. The Fourteen Amendmant also provides a individual substantive due process **right to bodily integrity.** **Rogers v. City of Little Rock, Ark**, 152 F.3d 790, 797 (8th Cir. 1998).   State has an inmate in custody there is an affirmative duty. Of providing care and not toorating sexual msconduct by prison staff.

There is an affirmative duty to provide proper protection to inmates. **_Christiansen v. City of Tulsa_**, 332 F.3d 1270, 1280. (10th Cir. 2003)   Where a warden acts to increase an inmates vulnerbility to sexual misconduct 14th Amendment liabliity arises. **_Robbins v. Oklahoma_** 519 F.3d 1242, 1251 (10th Cir. 2008) Due process violations may occur absent physical force and be based on mental coercion. **_Leyra v. Denno_**, 347 U.S. 556, 558, 74 S.Ct. 716, 98 L.Ed. 948 (1954) **_Rogers V. City of Little Rock, Ark_**, 152 F.3d 790, 797 (8th Cir. 1998)

Okllahoma has a zero tolorance of staff miscondct and DOC has a duty to provide a safe, humane, secure envioronment to inmates. (Knight Depo. p 101)

## PROPOSITION FOUR
## POLICY VIOLATIONS

Every female prisoner has the right not to be sexually exploited by prison staff.  **Keith v. Koerner (Keith II)**, 843 F.3d 833, 837 (10th Cir. 2016) ("[A]n inmate has a constitutional right to be secure in her bodily integrity and free from attack by prison guards." (alteration in original) (*quoting* **Hovater v. Robinson**, 1 F.3d 1063, 1068 (10th Cir. 1993). All correctional officers and administrators of the prisons in Oklahoma are taught that correctional officers may not date or have sexual relations with inmates, such acts being criminal.  The PREA is Oklahoma's way of trying to ensure these Constitutional rights are complied with.

Defendants, each of them, knew of Inmate Garland's above rights, and had a duty to enforce policies and procedures drafted to prevent female inmates from being violated.

> "It is clearly established that a prion official's deliberate indifference to sexual abuase by prison employees violates the Eighth Amendment". *Keith v. FCoemer (Keith I), 707 F. 3d 1185, 1188 (10th Cir. 2013.) We have further concluded 'an inmate has a constitutial right to be secure in her body **\*850** integrity and free from accack by prison guards.' And 'a prison official's failure to protect an inmate from a known harm may constitute a constitutional violation.' Hovater, 1 F.3d at 1068. In other words, 'prison officials . . . must 'take reasonable measures to guarantee the safety of inmates.' Farmer 511U.S. at 832. 114 S.Ct. 1970 (quoting Hudson v. Palmer, 468 U\*.S. 517, 526-27, 104 S.Ct. 3194, 82 L.2d.2d 393 (1984)"*

Defendants' policies recognize anad  validate the Defendants' duty to protect inmates known constitutional rights.

DOC has had unusally high amounts of sexual misconct and

expoitation of its inmates. Defendants knew or should have known that failing to enforce the policies created, and failing to create one to address the ongoing violations of women such as Plaintiff would cause violation of her constitutional rights. Plainitff has a constitutional right not to be sexually assaulted by prison officials.

## PROPOSITION FIVE

## SEXUAL ABUSE OF PRISONERS VIOLATES THE 4TH AMENDMENT

A guards sexual abuse of an inmate violates the the Fourth and 14th Amendments of the Consitution. ***Roger v. City of Little Rock, Arkansas,*** 152 F.3d 790, 796-97 (th Cir 1998). ***Graham v. Connor,*** 490 U.S. at 395, 109 S.Ct. 1865 (1989)The threshold test for 4th Amendment is clearly met. In general, a seizure occurs under the Fourth Amendment when "a reasonable person would have believed that he was not free to leave." ***Jones v. Hunt***, 410 F.3d 1221, 1225–26 (10th Cir.2005) (quoting ***Michigan v. Chesternut***, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988)).

The sexual abuse of inmate Garland by the Deputy Warden, and the failure of the Warden to take reporting of an inappriate relationship and underwear being given to an imate by the Deputy Warden satisfies all necessary elements of Plaintiff's deliberate indifference argument regarding Fourth Amendment violation and Eighth Amendment violations Defendants' action and inaction has violated Plaintiff's constitutional right to be free from sexual abuse and asssault by prison guards such as deputy warden RedEagle.

## PROPOSITION SIX

**WORKPLACE OPERATIONAL MANUAL POLICY SHOWS DEFENDANT WARDEN MCCOY WAS DIRECTLY AND PROXIMATELY RESPONSIBLE FOR OVERSIGHT OF EMPLOYMENT MATTERS, SUCH AS PROPER INMATE COUNTS**

22

DOC workplace policy (OP-040101) shows <u>Defendant Warden McCoy is responsible for enforcing it</u>, supporting a denial of 1983 claims.

Lewis admitted she is responsible for McCoy's compliance (Doc. 65 at p. 7). *Per* administrative rulings (ie. Ex 1 at p. 4), DOC has averred over the years that failure to abide by its inmate count policy is "very serious" security breach. (Exh. 16).

These Defendants (McCoy and Lewis) cannot overcome their own averments in Doc 65, internal policy OP-040101 and Ex. 16 that make them directly liable under federal civil rights, constitutional rights claims, and confirm that AIG (*not DOC*) is contractually and legally responsible for administrative investigation, resolution, and settlement, of Plaintiff's claim.

## **PERSONAL PARTICIPATION IN CONSTITUTIONAL VIOLATIONS**
### **Warden McCoy**

Warden McCoy had knowledge by inmate Estes' March 13, 2019 report that an inapproriate relationship was occuring between Deputy Warden Redeagle and inmate Garland where he provided her underwear and was spending excess time with inmate Garland. However the warden waited five days before having Chief of Security Cox obtain a statement from inmate Estes. COS Cox testified that was limited to only obtaining a statement from inmate Estes. He was not authorized to look into the matter any further. Warden McCoy should have reported the sexual misconduct allegations to the office of Fugitive Apprehension and Investigations for investigation as required by OP -030601. But failed to do so. (Knight Depo. pp 62-63, 69-70, 87) Warden McCoy told Investigator Knight she forgot to report it. (Knight depo. p. 104) (Exh 1, #5838)

Warden McCoy failed to report to the DOC Investigation Unit the information obtained on March 13th and 18th regarding the Deputy

Warden providing underwear to inmate Garland and the Deputy Warden in a relationship with inmate Garland.   (Exhibit 3 p. 7)

Warden McCoy should not have allowed the Deputy Warden to have knowledge of the allegations prior  to a formal investigation being conducted.   (Exh. 3, p. 7)

When Ms. Garland was questioned Warden McCoy did nothing to separate Garland from Redeagle or reassure inmate Garland from retaliation in violation of policy.   (Knight  Depo. p. 85)   To the contrary, no assurance of safety and protection were made to inmate Garland.  (Cox Depo, pp. 83-86, 94)

The failures of Warden McCoy left inmate Garland unprotected and at the mercy of the Deputy Warden.  (Exh. 3, p. 7)

During and after this time Deputy Warden Redeagle continued to carry his harassment of inmate Garland.  Around March 27, 2019, after inmate Estes alert of an inappropriate relationship, Deputy Warden Redeagle once again sexually abused inmate Garland.   (Garland Depo. pp. 99-100)  She tried to end things but he put his hand down her pants. (Garland Depo. pp. 100-102)

### Chief Administrator of Compliance Lewis

Defendant Lewis is the Chief Administrator of Auditing and Compliance.   She is in charge of compliance, auditing of operations and how EWCC is run.   (Lewis Depo. pp. 7, 26)  Safety and the physical structures of the EWCC are part of her job purview. (Lewis depo. pp 17, 26) Testimony makes it clear better video monitoring, staffing, and tracking of inmates lead to less sexual misconduct.

### PROPOSITION SEVEN

### THERE IS NO QUALIFIED IMMUNITY FOR SEXUAL ASSAULT

24

The right of prisoners to bodily integrity has been clearly established so that a reasonable Warden, deputy warden and correctional facility staff would be aware sexual abuse of a inmate is a violation of a known right.  The Oklahoma Department of Corrections has a high incident percentage of rape compared to the national average, and policies in place to prevent rape.  (Knight p.  74.)  Exhibit Amended Complaint paragraphs 44-47. All Defendants were aware that it is established law that sexual abuse of prisoners is prohibited.   The DOC has PREA training and has a zero tolerance for sexual misconduct.  (Cox Depo. pp 78-80, 90, Knight Depo. p. 101)

Plaintiff has identified that Defendants have a known duty to protect her from sexual or physical attack, and that Defendants, by turning a blind eye and deliberate indifference to enforcement of policies, caused these Constitutional violations. ***Estate of Crowell v. Board of County Comms. of County of Cleveland***, 2010 OK 5, 237 P.3d 134. No qualified immunity is proper, or available, for allowing sexual abuse of prisoners by guards. Sexual assault voilates clearly established law and right to be free from sexual abuse by public officials, and a reasonable officer would be aware of this right. ***Rogers V. City of Little Rock, Ark,*** 152 F.3d 790, 797 (8th Cir. 1998)

## CONCLUSION

In 2020 it is inconceiveable for a female prisoner to be sexually assaulted and lack any recourse under the law.  The US Constitution protects vulnerable populations including children, women, infirm, the elderly, and the incarcerated.  Fourth Amendment and Eighth Amendment violations have occurred.

Wherefore Plaintiff requests this Court overrule Defendants' Motion for Summary (Doc. 65).

Respectfull Submitted,

s/E.W. Keller
E. W. Keller, (OBA# 4918)
KELLER, KELLER & DALTON
201 Robert S. Kerr, Suite 1001
Oklahoma City, Oklahoma 73102
(405) 235-6693
(405) 232-3301 Facsimile
FOR PLAINTIFF

## **CERTIFICATE OF SERVICE**

This is to certify that on this 27th day of September, 2020 a true and correct copy of the above and foregoing instrument was filed and served through the ECF system, and mailed, postage fully prepaid to the following listed attorneys in this matter:

Kari Y. Hawkins
Assistant Attorney General
313 NE 21st Street
Oklahoma City, OK  73105

Anthony  L. Allen
106 S. Okmulgee Avenue
Okmulgee, OK  74447

/s/  E W KELLER
KELLER, KELLER & DALTON