**BEFORE THE OKLAHOMA MERIT PROTECTION COMMISSION**
**STATE OF OKLAHOMA**

| | |
|---|---|
| **LaTanya J. Webb,**<br>Appellant,<br><br>v.<br><br>**Department of Corrections,**<br>Appellee. | )<br>)<br>)<br>)    Case No. MPC 06-149<br>)<br>)<br>)<br>) |

**ISSUED**
**JUL - 6 2006**
OK MERIT PROTECTION COMM.
BY_____

## FINAL ORDER

This matter comes on for hearing on June 23, 2006 before the duly appointed, undersigned Administrative Law Judge at the offices of the Oklahoma Merit Protection Commission, Oklahoma City, Oklahoma. The Appellant, La Tanya J. Webb, appears personally, pro se with her table representative Willa Johnson. The Appellee, Department of Corrections, appears by and through counsel, Gary Elliott. Also present for Appellee was Table Representative, Ruby Jones-Cooper.

Appellant Webb is a permanent, classified state employee appealing an adverse disciplinary action of suspension without pay for ten (10) days. Whereupon the hearing began and the sworn testimony of witnesses was presented, along with exhibits. Regarding the exhibits, the parties stipulated to the admissibility of Joint Exhibits No. 1 through 13. In addition, the Appellant offered Exhibits 14, 15, 16, 20 and 22, which were objected to by the Appellee. This Administrative Law Judge overruled the objections and admitted Appellant's Exhibits 15 and 16 as they were relevant to the issue of proper use of progressive discipline, and sustained the objections to Exhibits 14, 20 and 22. The Appellant offered Exhibit 23, with no objection by the Appellant and it was admitted. Accordingly all exhibits presented and admitted are incorporated herein and made a part hereof. The record was closed on June 23, 2006.

After careful consideration of the record, including all relevant evidence, testimony, and exhibits, the undersigned Administrative Law Judge issues the following findings of fact, conclusions of law, and order.

1

## **FINDINGS OF FACT**

### Background of Case

Appellant LaTanya Webb (hereinafter "Webb") is a classifed employee of the Appellee Department of Corrections (hereinafter "DOC"). Webb was a correctional officer, employed at the Hillside Community Corrections Center. On April 7, 2006, DOC provided Webb with notice of the proposed disciplinary action (Exhibit 3). Webb was given an opportuinty to respond and on April 10, 2006, she filed a written response to the proposed discipline (Exhibit 4). In her response to the proposed discipline, Webb admitted that she made a critical error in judgment and that it was a mistake (Exhibit 4). She did not offer any reasons for the use of the inmate to conduct the counts, nor does she mention her medical condition as a mitigating circumstance for DOC to consider in her response.

On April 21, 2006, DOC provided Webb with notice of discipline, imposing a ten (10) day suspension without pay ( Exhibit 5). In the notice, DOC sets forth certain actions by Webb which were considered to be misconduct and conduct unbecoming a public employee. DOC found that on at least twelve (12) occasions, Webb did not personally conduct the inmate counts, but allowed an inmate to conduct "counts" of the upper runs of the East Housing Unit in violation of DOC policy OP-040101, IV, 2. (Exhibit 2). The notice also contained a reference to a prior disciplinary action of verbal counseling.

### The Testimony

The testimony of two witnesses was provided in support of the allegation that Webb used an inmate to conduct the required counts. Inmate Kelly Craig testified that on a number of occasions between March 4 and March 20, 2006, she completed the inmate counts on the upper runs for Webb because Webb was unable to do so due to her medical condition. She was unsure of the exact number of times that this occurred, but to the best of her knowledge, it occurred between six (6) and twelve (12) times. Exhibits 7, 8, and 9 are written statements given by Kelly Craig regarding these incidents. In Exhibit 7, on March 20 she indicates that she conducted the counts for Webb about twelve (12) times. In Exhibit 8, she corrected her previous statement and stated that it was much lower than that number. Kelly Craig reported to Webb that she was forced to make the previous reports and was very uncomfortable with it (Exhibit 9). Betty Tillis also testified that she observed Kelly Craig conducting the counts on different occasions for part of the month of March. Her written statement is included as Exhibit 6 and is consistent

with her testimony. Ms. Tillis further testified that, as a DOC employee, she could have done the upper counts, but was never asked to do so. Both witnesses testified that they were aware of the medical problems that Webb was experiencing as a result of her pregnancy.

James Smith, the Chief of Security at the Hillside Community Corrections Center, testified that he was made aware that Webb was using inmate Craig to perform the counts around March 20, 2006. He testified that he could not remember which inmate told him, but he confirmed the information by interviews with Craig and Tillis. He testified that he conducted the prior disciplinary action of a verbal counseling session with Webb in December, 2005, but had no written documentation regarding this session. He further testified that this incident was considered extremely serious in that maintaining inmate counts through actual visual verification of "flesh and movement" was essential to maintaining proper security, and due to the number and gravity of these incidents, he recommended Webb be terminated. He indicated that he was aware of Webb's medical condition but denied knowledge of the letters from her doctors admitted as Exhibits 11 and 12. He stated that when he was made aware of her condition by the letter of March 10 (exhibit 13) he made arrangements to accommodate the restrictions but did not closely monitor that arrangement.

Ruby Jones-Cooper testified that she was the District Supervisor and made the final decision on imposing the discipline upon Webb. She testified that she considered the inmate counts to be one of the most serious duties of a correctional officer such as Webb and Webb's actions to be serious misconduct due to the possible severe consequences of inaccurate counts. She took Webb's honesty in admitting her actions into consideration in imposing the discipline and chose a suspension without pay as an appropriate level of discipline for this incident, in order to give her an opportunity to correct her conduct and not repeat this action. Finally, she testified that she would have imposed this level of discipline irrespective of the prior disciplinary action due to the seriousness of the offense. She stated that Webb never raised her health issues or indicated that she had been denied assistance when needed. Jones-Cooper also testified that if Webb had been unable to climb the stairs, she had the authority to order the inmates out of their rooms and could have visually conducted the count from below.

Webb offered her testimony in support of her appeal. She testified that she was pregnant and had complications that restricted her ability to perform her job at times. She indicated that she had provided DOC with documentation of her condition, but received no response from her

employers. She admitted that, on occasion, she was unable to climb the stairs and approximately six (6) times, she requested inmate Craig to make the counts on the upper runs for her. She testified that she could not see all of the inmates in their cells on the upper level during this count. She stated that the counts were always correct and that no security was breached as a result of her action. She also testified that she never asked other correctional employees for help, nor did she consider alternative methods of conducting the counts, although she was aware of the DOC policy on confirming "flesh and movement" in making counts. She felt that the other DOC employees and supervisors should have volunteered to assist her, knowing her problems with her pregnancy, and their failure to do so lessens her culpability.

### ISSUES

1. Whether DOC appropriately followed its progressive discipline policy.
2. Whether DOC properly considered Appellant's medical condition and restrictions as mitigating circumstances.

### DISCUSSION

Appellant admits that she knew of DOC's policy OP-040101, entitled "Facility Security Standards", which provides at IV., 2., that "Correctional personnel conducting inmate counts will see flesh and movement (e.g., the inhaling and exhaling of breath) for each inmate counted as being present, regardless of the inmate's security status". It is clear from the evidence and testimony that Webb failed to conduct the inmate count as required by that policy in that she permitted an inmate to conduct the count and she did not see each inmate for which she submitted the count on at least six (6) separate occasions, although it is not clear that the incidents occurred twelve (12) times as alleged by DOC. It is also clear from the testimony that this was considered to be a very serious incident which could have jeopardized the security of the facility. Based upon the record, the undersigned finds that DOC has met its burden of proof that just cause existed for the discipline imposed.

There is evidence of prior informal discipline in the form of a verbal counseling session conducted on December 12, 2005. It was not clear from the evidence that Mr. Smith informed

4

Webb of the steps which must be taken to resolve the problem giving rise to the discipline or the consequences of repeated infractions, as required by DOC's progressive disciplinary procedures (Exhibit 1). However, it was the testimony of both Smith and Jones-Cooper that this violation was serious enough and was repeated numerous times, necessitating the use of more severe disciplinary action, also as provided by DOC's progressive disciplinary procedures (Exhibit 1). DOC has proven, by a preponderance of the evidence, that this disciplinary action was consistent with its progressive disciplinary procedure.

Jones-Cooper testified that she took Webb's medical condition into consideration in imposing a suspension rather than the recommended termination. Under DOC's progressive discipline procedures, she could have suspended Webb for up to sixty (60) calendar days or demoted her due to the severity of the misconduct. Although Webb provided letters of restrictions from her physician, none of the letters indicated that she was precluded from climbing stairs. Webb never advised her supervisors that she could not conduct the inmate counts nor did she request assistance from any other DOC employee to conduct the counts. The undersigned cannot reasonable find that the discipline imposed was unjust given all of the circumstances. Therefore, the DOC has proven, by a preponderance of the evidence, that the level of disciplinary action imposed was just.

## CONCLUSIONS OF LAW

1. The Oklahoma Merit Protection Commission has jurisdiction over the parties and the subject matter in this cause and the filing of the Petition for Appeal was timely.

2. Any finding of fact which is properly a conclusion of law is so incorporated herein as a conclusion of law.

3. Merit Rule 455:10-9-2 states that the Appellee DOC has the burden of proof in an adverse action and must prove by a preponderance of the evidence that just cause exists for the adverse action and that the discipline imposed is just.

4. Merit Rule 455:10-11-15 states that a permanent classified employee may be suspended without pay for any of the reasons set forth in 455:10-11-14, which are misconduct, insubordination, inefficiency, habitual drunkeness, inability to perform the duties of the position in which employed, willful violation of the Oklahoma Personnel Act or the Merit Rules, conduct

unbecoming a public employee, conviction of a crime involving moral turpitude or any other just cause.

5.  Webb clearly violated DOC's policy OP-040101, entitled "Facility Security Standards", which provides at IV., 2., that "Correctional personnel conducting inmate counts will see flesh and movement (e.g., the inhaling and exhaling of breath) for each inmate counted as being present, regardless of the inmate's security status" by permitting an inmate to conduct the counts for the upper level of the East Housing Unit.

6.  Appellee has met its burden to prove, by a preponderance of the evidence that just cause exists to discipline Webb for failing to comply with the above referenced DOC policy.

7.  Appellee has met its burden to prove, by a preponderance of the evidence, that it followed the DOC Progressive Disciplinary Procedure.

8.  Appellee has met its burden to prove, by a preponderance of the evidence, that the discipline imposed was just under the circumstances considering the seriousness of the conduct as it relates to the employee's duties and responsibilities; the consistency of action taken with respect to similar conduct by other employees of the agency, the previous employment and disciplinary records of the employee and other mitigating circumstances.

## ORDER

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the undersigned Administrative Law Judge that the petition of Appellant LaTanya J. Webb, MPC 06-149 be DENIED.

This Order entered this 3rd day of July, 2006.

*Lydia Lee*
Lydia Lee
Administrative Law Judge
Oklahoma Merit Protection Commission
3545 N.W. 58th Street, Suite 360
Oklahoma City, Oklahoma 73112